Joseph Earl **BURKS** and James Donald Miller, Appellants,

v.

**COMMONWEALTH** of Kentucky, Appellee.

Court of Appeals of Kentucky.

Oct. 1, 1971.

Britton P. Franklin, Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Curtis L. Wilson, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Joseph E. Burks and Donald Miller were indicted on four counts of possession and sale of narcotics in violation of KRS 218.-020. The indictment charged that on two successive dates, October 5 and 6, 1968, they (1) unlawfully possessed and (2) unlawfully sold morphine to an unnamed person. Following a joint trial on pleas of not guilty, in which neither of the appellants testified, Miller was found guilty on all four counts and his punishment was fixed at two 10-year and two 20-year terms in the penitentiary and $80,000 in fines. Burks was found guilty on two counts and his punishment was fixed at one 10-year and one 20-year term and $40,000 in fines. Cf. KRS 218.210. Judgment was entered in accordance with the verdict, with the prison terms to run concurrently. Burks and Miller appeal.

At approximately 4:00 P.M. on October 5, 1968, Detective Oakes of the Louisville Police Department received what is described as "certain information" from an unnamed narcotics addict, hereinafter called Mr. X, which resulted in a meeting between Mr. X and the appellants for the purpose of Mr. X's purchasing narcotics from them.

At about 7:00 P.M. on the same day Detectives Oakes and Cissell met with Mr. X in a motel room. The officers searched the person, clothing and automobile of Mr. X for narcotics. Being satisfied that he possessed none, the officers gave him $30 to use in the subsequent purchase of narcotics. Mr. X then proceeded alone in his own automobile, followed by the officers in a separate vehicle, to the intersection of Second and Ormsby Streets.

Shortly after 8:00 P.M. an automobile containing Miller and Burks and a man named Wilson arrived at the northwest corner of Second Street. Mr. X approached the automobile, followed by the two detectives. Mr. X stood near the left front door of the automobile with the two officers a few feet away and in position to see and hear what followed. The officers saw Wilson count out 10 pills from a bottle, put them in a cellophane packet and hand the package to Miller, who in turn handed it to Mr. X, whereupon Mr. X at once counted out and handed Miller $30 and Miller gave it to Wilson. Miller asked Mr. X if he wanted any more, and upon Mr. X's advising that he would have some money the next day Miller agreed to meet him at the same time and place on the next evening. Mr. X then walked directly to the officers and gave them the package, which was found to contain 10 morphine tablets.

On the following evening, October 6, 1968, Detectives Oakes and Cissell observed substantially the same occurrence as they had witnessed the previous evening. The appellants and Wilson arrived in the same car as before. The seating arrangement in the car had changed, and it was parked at a different place, but the transaction observed by Oakes and Cissell was much the same as that of the night before. With Oakes and Cissell standing but a few feet away, Burks counted out five pills from a bottle, placed them in a cellophane packet and handed it to Miller, who then passed it to Mr. X. Mr. X gave $15 to Miller and Miller handed it to Wilson. The container purchased by Mr. X was later found to contain five morphine tablets.

The role of Mr. X in these transactions was brought out in the testimony of Oakes, the first witness, and at this time a continuing motion was made by the appellants to compel the Commonwealth to disclose the identity of and to produce Mr. X for the purpose of direct examination. The court overruled this motion and a renewal of it at the close of the Commonwealth's case.

The sole contention in support of the appeal is that the trial court committed prej-

udicial error in refusing to compel the Commonwealth to reveal the identity of and to produce Mr. X.

The appellants rely primarily on Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In that case the government relied upon the testimony of two federal narcotics agents, Durham and Fields, and two police officers, Bryson and Sims.

On the night of August 12, 1954, these four officers met with an unnamed informer described as John Doe. Doe and his car were searched; no narcotics were found. Bryson then hid himself in the trunk of Doe's car. Doe proceeded in his car, followed by the other three officers, to a destination where he had arranged to meet a potential purchaser of narcotics, the petitioner in that case.

At the prearranged meeting place the petitioner entered Doe's car. The car then pulled away, containing Doe, the petitioner and the police officer hidden in the trunk. It was followed by two cars containing the other three police officers. One of those cars driven by Durham managed to keep Doe's car in sight.

Doe's car finally stopped and Durham observed the petitioner walk from the car to a nearby tree, pick up and return a small package. The petitioner was then observed making a motion as if depositing the package in the car and then waving and walking away. Durham proceeded to the car and recovered the package, which was later proved to contain heroin.

Officer Bryson, concealed in the trunk, had overheard the conversation between the petitioner and Doe and had raised the trunk lid so that he could see the petitioner walk to the tree, pick up the package and return to the car.

Under these circumstances the Supreme Court held that the trial court erred in sustaining the government's right to withhold the identity of John Doe.

"The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957).

See also Portomene v. United States, 221 F.2d 582 (5 Cir. 1955); United States v. Conforti, 200 F.2d 365 (7 Cir. 1953); Sorrentino v. United States, 163 F.2d 627 (9 Cir. 1947); and Annotation, 76 A.L.R.2d 262 at pp. 287 et seq.

*Roviaro* and its supporting precursors are based upon the constitutional principle of fundamental fairness as an indispensable element of due process. The Commonwealth seeks to distinguish it on the basis of the informer's being described as an undercover "employe" of the police, but it seems to us that such a distinction is utterly unrelated to the principle involved. The significant point is that when an informer participates in or places himself

in the position of observing a criminal transaction he ceases to be merely a source of information and becomes a witness. We have no quarrel with the general proposition that the state should not be required to disclose its sources of information, including the identities of informers, but there simply can be no valid principle under which the identity of a known witness may be concealed from adversary parties in any kind of a judicial proceeding, criminal or civil.

Other distinctions sought to be drawn between this and the *Rovario* case are equally unavailing. Though it would be better practice to raise the question by pretrial motion, the Commonwealth advanced no reason why it could not produce the witness or at least divulge his identity and whereabouts during the course of the trial.

The judgment is reversed with directions that appellants be granted a new trial.

All concur.