**STATE of Iowa, Appellee,**

**v.**

**Dennis LAMAR, Appellant.**

**No. 54582.**

Supreme Court of Iowa.

Oct. 17, 1973.

William L. Kutmus, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., C. Joseph Coleman, Jr., Asst. Atty. Gen., and Ray Fenton, Co. Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

RAWLINGS, Justice.

Claiming errors regarding his asserted entrapment defense defendant appeals from judgment on jury verdict finding him guilty of robbery with aggravation. We affirm.

July 9, 1970, at about 4:00 p. m., Bill Rappaport, manager of Super Valu Store at 2627 E. University, Des Moines, was robbed at gunpoint. Defendant, Dennis Lamar, and another man were arrested in the act by police officers admittedly present as the result of tips by an informer or informers.

Upon being charged with aggravated robbery Lamar pled not guilty, then moved for a pretrial production of exculpatory evidence. In support thereof he asserted what is known as the defense of entrapment. At time of hearing on that motion Lamar sought to elicit from testifying policemen the identity of any informer. Trial court at all times sustained the officers' privilege to refuse such disclosure. Some of them did, however, admit the robbery related stakeout of the store resulted from several tips, some by phone, one by a

person who appeared at the police station the day of the robbery.

In course of trial on the merits Lamar further repeatedly endeavored, in support of his entrapment defense, to elicit evidence as to identity of any informer but was precluded from doing so by trial court's rulings.

Upon completion of the State's case Lamar moved for a dismissal. That motion was overruled.

William Thomas Newton, called as a witness by defendant, was inceptionally informed by trial court, sua sponte, regarding his Fifth Amendment rights. Thereupon defense counsel requested the witness be further advised to the effect such privilege did not extend to or cover transactions between him and police officers. Newton was not so advised. Thereafter trial court consistently upheld Newton's refusal to answer any questions relating to the instant offense, and any contact or association with officers Cleatus Leaming or Lew Rhodes.

At close of all evidence defendant's prior motion to dismiss was renewed and amended. By the amendment Lamar's attorney asserted trial court erred to defendant's prejudice in upholding Newton's right not to answer questions asked of him regarding any police officer related dealings or transactions. The aforesaid motion as amended was also overruled.

Subsequently defendant requested a jury instruction be given regarding entrapment. More specifically the instruction so sought stated, in material part, if it be found intent to commit the crime originated with police officers *or their agents* the jury should not return a guilty verdict. Trial court refused this request.

After return of the aforesaid guilty verdict defendant filed specific objections and exceptions to instructions given. Complaint was thereby directed to absence of terminology in instruction 13 to the effect entrapment can be effected by law enforce-

ment officers or by such officers acting through others as their agents.

The foregoing exception was by reference made a part of defendant's separate motion for a new trial. This motion was overruled.

We shall later refer to other instantly involved evidence and procedural matters as they relate to issues presented.

In support of a reversal defendant here urges, trial court erroneously failed (1) to compel the State to disclose identity of its informer or informers; (2) to properly instruct the jury regarding the defense of entrapment.

Defendant also contends nondisclosure served, in effect, to deny him his rights of due process and to be confronted by witnesses against him in violation of U.S. Const. amends 6, 14 and Iowa Const. art. I, §§ 9, 10.

I. An orderly approach to the first issue here raised necessitates a prefatory reference to some pertinent, though perforce general, principles regarding disclosure of an informer's identity.

As instantly applied the so-called informer's privilege is actually the State's right of nondisclosure as to identity of those persons who supply law violation information to officers charged with enforcement of any such law.

This privilege is premised upon public interest in maintaining the flow of information essential to law enforcement.

To be weighed against that interest, however, is an accused's right of access to facts necessary for the preparation and presentation of his defense, and to a fair trial.

■ Therefore, any determination as to whether an informer's identity is to be revealed requires a balancing of the aforesaid countering interests in light of the facts and circumstances peculiar to each

case. Among facts to be considered in this weighing process are (1) nature of the offense charged; (2) defenses raised; and (3) potential significance of an informer's testimony.

■ The burden is inceptionally upon defendant to show cause for such disclosure. And in this regard the mere assertion of entrapment as a defense to a criminal charge will not suffice.

■ But when showing is made by an accused that an informer's identity is material to his defense or essential to a fair trial the informer privilege disappears.

In support of the foregoing see Roviaro v. United States, 353 U.S. 53, 59–65, 77 S. Ct. 623, 627–630, 1 L.Ed.2d 639 (1957); United States v. Alvarez, 472 F.2d 111, 113 (9th Cir. 1973); Lannom v. United States, 381 F.2d 858, 861 (9th Cir. 1967), cert. denied, 389 U.S. 1041, 88 S.Ct. 784, 19 L.Ed. 2d 833 (1968); State v. Crawford, 202 N. W.2d 99, 102 (Iowa 1972); State v. Battle, 199 N.W.2d 70, 71–72 (Iowa 1972); State v. Denato, 173 N.W.2d 576, 577–579 (Iowa 1970); 8 Wigmore on Evidence, § 2374 (McNaughton Rev. 1961); McCormick on Evidence, § 148 (2d ed. 1972); 21 Am. Jur.2d, Criminal Law, § 332; 58 Am.Jur., Witnesses, § 534; 23 C.J.S. Criminal Law § 954; Annot., 76 A.L.R.2d 262.

■ Moreover, courts have generally held the identity of an informer must be disclosed when the informant participated in or witnessed the crime charged. See Roviaro v. United States, 353 U.S. at 63–65, 77 S.Ct. at 629–630; State v. Battle, 199 N.W.2d at 71; Bennett v. State, 252 Ark. 128, 477 S.W.2d 497, 499 (1972); Burks v. Commonwealth, 471 S.W.2d 298, 300–301 (Ky.1971); State v. Davis, 450 S. W.2d 168, 172–173 (Mo.1970); State v. Phillips, 27 Ohio St.2d 294, 56 Ohio Op.2d 174, 272 N.E.2d 347, 350–351 (1971); Annot., 76 A.L.R.2d at 286–290.

II. At close of defendant's previously noted pretrial motion hearing trial court

held, as aforesaid, the identity of any informer or informers need not be disclosed. Under existing circumstances we find no error in that holding.

Inceptionally Lamar, in course of that proceeding, elicited evidence from testifying officers only to the effect policemen were stationed at the robbery site as the result of advice received from an informant or informants.

Noticeably defendant then presented no evidence from which it could even be inferred he participated in the offense charged because of inducement or the urging of anyone whomsoever.

Neither did Lamar, at that time, show identity of an informer was in any respect material or essential to his defense.

Finally, in this area, there is nothing in the record from which it could be found Lamar was then precluded from making a full and adequate showing of cause for informant identity disclosure.

III. We must also determine whether continued refusal by the court, in course of trial, to require informant identification constituted error.

This mandates a review of the instantly involved factual situation.

Cleatus Leaming, assistant chief of police, Des Moines, a State's witness, testified that about 10:00 a. m., July 9, 1970, an individual appeared at his office. After some preliminary conversation the visitor asked whether Leaming wanted to catch some robbers in the act, to which the latter responded in the affirmative. Thereupon the visitor reported the general locale and time of a planned robbery that same day Thereafter Leaming received at least four phone calls from an informer or informers regarding the above noted robbery. On the last of such calls, about 3:30 p. m., Leaming was told the offense would be committed ten to 20 minutes later. Leaming also stated he had been told, (1) his informer, wearing a bright jacket, would

participate in the robbery; (2) Dennis Lamar and Fred Hughes were to assist in committing the crime. Leaming further testified that soon after the robbery officer Rhodes gave an informer some money.

Des Moines detective Lew Rhodes' testimony reveals he was present when the informer visited Leaming as aforesaid. Rhodes knew the informant; was present at the subsequent store stakeout; saw three black males enter the establishment; and soon thereafter observed an individual wearing a bright colored jacket go around the corner but did not pursue him.

Both Leaming and Rhodes denied having had any part in initiating or suggesting the instant robbery to anyone.

Other police officers testified regarding the after robbery flight of a man attired in a bright jacket and the arrest of Lamar and Fred Hughes at the robbery site.

Debbie Newton, defense called witness, identified herself as Billy Newton's wife, then stated Newton, wearing a bright orange jacket, came to her home about 11:00 a. m., July 9, 1970; she was there sleeping with Lamar; Newton asked Lamar to help pull a robbery; Lamar first refused but after Newton got Lamar "high" on dope the latter agreed to help; and she, Debbie, was the subject of a "conflict" between Newton and Lamar.

Billy Newton, also a defense called witness, admitted he knew Rhodes but denied knowing Leaming. As aforesaid he consistently refused to answer any informer or robbery related questions.

Defendant, a witness in his own behalf, first substantially corroborated Debbie Newton's testimony, then said he, Newton, and apparently Hughes, went to Sue Newton's home before the robbery to get some stocking masks and was told Newton then, or about 3:30 p. m., had placed a phone call. Lamar also admitted having taken part in the robbery here charged. He further testified Newton and Hughes were accomplices in the act; Newton, then wearing a bright orange jacket, had run out of the store; and the police arrested him (Lamar) and Hughes at the robbery site. Lamar denied existence of any "conflict" between himself and Newton.

Briefly stated, the foregoing reveals (1) Newton was a participant in the robbery; (2) a strong likelihood he was an informer; (3) a sufficient basis upon which it could be found Newton induced Lamar to take part in the robbery; and (4) police officers were stationed at the robbery target store because of tips supplied by an informant or informants. Significantly there is no testimony whatsoever disclosing any person other than Newton ever urged, induced or persuaded Lamar to become involved in the instantly charged crime. Thus Lamar's right of informant identity focuses upon Newton alone.

This is, in brief, the factual picture we must now view in light of applicable precepts.

■ It must at the outset be understood, when an accused is entitled to know the identity of an informer it will not suffice to argue such identity has been inferentially revealed by the evidence. See Roviaro v. United States, 353 U.S. at 60, 77 S.Ct. at 627, n. 8.

■ And a defendant's cross-examination of police officers is no substitute for the opportunity to effectively examine an identified informer. See Roviaro v. United States, 353 U.S. at 64, 77 S.Ct. at 629.

■ Moreover, the denial by law enforcement officials that they themselves, or through others acting for them, induced an accused to commit the offense charged does not negate entrapment merely because such denial stands uncontradicted. See In re Marriage of Boyd, 200 N.W.2d 845, 851–852 (Iowa 1972); State v. Estrella, 257 Iowa 462, 471, 133 N.W.2d 97 (1965); State v. Triplett, 248 Iowa 339, 346, 79 N.W.2d 391 (1956).

■ Under existing circumstances we now hold, in the face of defendant's repeated demands, trial court erred in failing to determine by appropriate proceedings whether Billy Newton was an informer and if so, in not requiring attendant disclosure. With reference thereto see generally United States v. Alvarez, 472 F.2d at 113; United States v. Day, 384 F.2d 464, 470 (3d Cir. 1967); Rule 510, Proposed Rules of Evidence for United States Courts and Magistrates, and Advisory Committee's Note, Transmitted Draft 1972, 56 F.R.D. 183, 255–258; 19 Drake L.Rev. 486, 491 (1970). See also State v. White, 260 Iowa 1000, 1006–1008, 151 N.W.2d 552 (1967); cf. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

IV. The State contends, however, a finding of such error is in any event non-prejudicial since defendant had opportunity to and did examine Newton as a witness.

As heretofore noted Lamar called Newton as a defense witness and questioned him at length. But Newton repeatedly invoked his Fifth Amendment rights and thereupon consistently refused to answer all inquiries regarding any informer or robbery related events or conversations. Furthermore, since Newton was identified by Lamar as a participant in the robbery here involved Newton's right to remain silent was unquestionably foundationed upon a sound constitutional footing. See Miranda v. State of Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966); Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653 (1964).

By the same token Newton was protected against any disclosure he had reasonable cause to believe could be used against him in a criminal prosecution or which could lead to other evidence which might be so used. See Application of Gault, 387 U.S. 1, 47–48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967), quoting Mr. Justice White concurring in Murphy v. Waterfront Com'n of New York Harbor, 378 U.S. 52, 94, 84 S. Ct. 1594, 1611, 12 L.Ed.2d 678 (1964).

Consequently, there is little or no likelihood the actual disclosure of Newton as an informer would have changed the result of trial in this case.

■ That in turn means any error attendant upon nondisclosure was demonstrably without prejudice to Lamar. Cf. State v. Kelsey, 201 N.W.2d 921, 927 (Iowa 1972); People v. Ross, 67 Cal.2d 64, 60 Cal.Rptr. 254, 429 P.2d 606, 613–614 (1967).

V. Next to be considered is defendant's assignment, *supra*, regarding instruction 13 as submitted.

By the controverted portion thereof the jury was told:

"If the intent to commit the crime did not originate with the defendant and he was not carrying out his own criminal purpose, but the crime was suggested by law enforcement officers for the purpose of entrapping and causing the arrest of the defendant, then defendant is not criminally liable for the act so committed and you should return a verdict of not guilty."

Briefly stated, Lamar contends trial court erred in refusing to include in the above quoted portion of instruction 13, after the words "suggested by law enforcement officers", the additional phrase "or their agents".

By reason of our conclusion, *infra,* there is no need to here consider established rules relative to preservation of error, if any, regarding jury instructions in criminal cases. See, however, State v. Youngbear, 203 N.W.2d 274, 277–278 (Iowa 1972); State v. Hackett, 197 N.W.2d 569, 572 (Iowa 1972).

There are, however, some pertinent guiding principles to be considered.

■ It is axiomatic a jury must be instructed on the law applicable to facts supported by the evidence and shall be so instructed if evidence is admitted which sup-

ports some involved issue. See State v. McConnell, 178 N.W.2d 386, 389–390 (Iowa 1970).

■ But the above noted standard comes into play only where relevant evidence is produced which would make apparent the materiality of the law claimed applicable thereto. See State v. Armstrong, 203 N.W.2d 269, 274 (Iowa 1972); State v. Davis, 175 N.W.2d 407, 410–411 (Iowa 1970); 23A C.J.S. Criminal Law § 1313.

■ This means, a trial court is not required to instruct the jury on any issue which finds no evidentiary support in the record.

VI. So the question now posed is whether the record discloses evidence sufficient to create a jury issue as to Lamar's asserted entrapment defense.

In State v. McGranahan, 206 N.W.2d 88, 90 (Iowa 1973), this court defined entrapment as "the inducement of an innocent person into the commission of a crime by trickery, persuasion or fraud of a government agent." See also United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 1644–1645, 36 L.Ed.2d 366 (1973).

■ As a corollary to the foregoing it is, however, understood the State cannot disown persons acting as agents for law enforcement officers, including informers, and effectively insist it is not responsible for their actions. See Sherman v. United States, 356 U.S. 369, 373–374, 78 S.Ct. 819, 821–822, 2 L.Ed.2d 848 (1958); Notaro v. United States, 363 F.2d 169 (9th Cir. 1966); Johnson v. United States, 115 U.S. App.D.C. 63, 317 F.2d 127, 128 (1963).

■ Thus, if there is any evidence upon which a jury could reasonably find that peace officers, acting through others as their agent or agents, did by trickery, persuasion or fraud induce an innocent person to commit the crime charged the jury should be accordingly instructed. See

United States v. Russell; Sherman v. United States; Notaro v. United States; Johnson v. United States; State v. McConnell, all *supra*. See also Mathes and Devitt, Federal Jury Practice and Instructions, § 10.12 (Supp.1968); 5 Reid's Branson Instructions to Juries, § 3413 (3d ed. Supp.1959).

■ Conversely, the commission of an offense by a person acting pursuant to the self-initiated inducement of some private citizen alone does not constitute entrapment in the commonly accepted legal sense. See State v. White, 260 Iowa 1000, 1008, 151 N.W.2d 552 (1967).

At this point it is essential we again refer to the fact that no evidence was presented upon which it could be reasonably found anyone other than Newton urged, persuaded or induced Lamar to take part in the Super Valu Store robbery. Phrased otherwise, there is no basis upon which it could be here held disclosure of informant identity was material to Lamar's defense unless Newton be the informer. That is essentially the position adopted by or in which Lamar placed himself. See Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 1385–1386, 10 L.Ed.2d 462 (1963).

VII. No useful purpose will be served by here repeating the factual situation previously disclosed.

■ As related to the matter of entrapment the record patently reveals nothing more than that Newton, acting pro se, persuaded or by trickery induced Lamar to take part in the instantly involved Super Valu Store robbery. This is a far cry from entrapment initiated by officers Leaming and Rhodes.

It is therefore apparent Lamar had the benefit of a defense related instruction to which he was not entitled. See Lopez v. United States, *supra*. From this flows the conclusion, and we now hold, defendant's asserted error regarding instruction 13 is without substance.

VIII. Neither is there merit in defendant's claim to the effect nondisclosure of an informant's identity, in essence, denied him his constitutional rights to confront witnesses against him and to due process. See United States v. Russell, 411 U.S. at 426, 93 S.Ct. at 1640–1643; McCray v. State of Illinois, 386 U.S. 300, 312–314, 87 S.Ct. 1056, 1063–1064, 18 L. Ed.2d 62 (1967).

Affirmed.