STATE of Iowa, Appellee,

v.

Noah William SHEFFEY, Appellant.

No. 57942.

Supreme Court of Iowa.

June 30, 1976.

Rehearing Denied July 26, 1976.

Braud, Warner & Neppl, Rock Island, Ill., for appellant on trial, and Newport & Buzzell, Davenport, for appellant on appeal.

Richard C. Turner, Atty. Gen., Edward N. Wehr, County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

Noah William Sheffey was charged by county attorney's information filed July 15, 1974, with the crime of delivery of a controlled substance, amphetamine, in violation of section 204.401(1)(b), The Code, 1973. Trial by jury resulted in a verdict of guilty and defendant appeals from judgment imposing sentence on that conviction.

May 9, 1974, special agent Steve Henson of the Iowa Bureau of Criminal Investigation and a confidential informant went to the Fox Den tavern in Davenport to negotiate a drug sale with defendant, who had earlier telephoned the confidential informant.

Henson had been fitted with a battery operated electronic transmitter at the local Highway Patrol office. In connection with this, special agents Frank Bell and Steve Sottos, respectively of the Department of Public Safety, Vice Enforcement and the Iowa Division of Narcotic and Drug Enforcement, stationed themselves in a church parking lot some 500 to 1000 feet from the Fox Den where they were able to observe the front and side of the tavern. Their vehicle was equipped to receive any broadcasts made by Henson's transmitter.

Agent Henson and the informant drove the latter's automobile to the Fox Den and entered the bar around 9:45 p. m. where the two met defendant. As the Fox Den was rather noisy, defendant suggested the three men proceed to his apartment over the bar. Sottos observed them emerge from the bar and go up some stairs to an apartment. Henson testified he, the informant and defendant were the only people at the apartment.

Defendant stated he had a large quantity of White Cross tablets (amphetamines) and offered to sell twenty dollars worth, about 100 pills. If Henson liked them, defendant said he could come back for more. As defendant did not have a telephone, he stated he would have to telephone another person to make the delivery. Henson handed defendant a twenty dollar bill.

The three men then went back downstairs, where Henson and the informant went up to the bar and sat down. Defendant left for a few minutes, then returned and went into a phone booth where, Henson testified, it appeared defendant made a telephone call. Defendant then left the tavern's "main area" for a short time, returned and apprised Henson and the informant someone had placed the amphetamines in their car at the right side of the front seat. At that, the trio proceeded outside. Henson walked the short distance to the parked car, found the drugs where defendant had said they would be and returned. He held up the small bag and asked defendant if these were the drugs to which defendant replied in the affirmative.

After a short conversation concerning the quality of the amphetamines and the fact caffeine was sometimes mixed with White Cross, defendant stated he expected to receive a large quantity of drugs whereupon Henson could purchase more. The agent and the informant then departed for the Highway Patrol office at approximately 11:10 p. m., where the drugs were turned over to Agent Sottos who in turn delivered them to James Dahlgren, chemist for the Criminalistics Laboratory in Des Moines. Dahlgren determined the white tablets were amphetamines.

Agents Bell and Sottos had been able to monitor virtually the whole conversation, except for some portions in the noisy Fox Den. Bell testified he was familiar with both the voices of Henson and the confidential informant and the transmissions included these two voices plus one other.

As stated, the jury returned a verdict of guilty. Defendant's appeal presents one question for review—whether the trial court effected prejudicial error by refusing defendant discovery of the name and address of the confidential informant.

Defendant had, prior to trial, filed a "Motion for Discovery of Identity of Informant," wherein it was declared an "undisclosed informant was present immediately before, during and after the alleged transaction and was present at certain alleged conversations between the defendant and the law enforcement officials involved in the case." It was stated in the motion there was "no valid reason" why the informant's name should not be disclosed and that the failure to provide defendant this information would deprive him of his constitutional due process and confrontation rights. The trial court denied the motion. Later, during cross-examination of Agent Henson, defense counsel requested the confidential informant's name. The trial court would not allow it.

Since the informant was present and witnessed the illegal drug transaction, defendant argues the trial court committed reversible error in not requiring the State to disclose his identity. The State counters it possesses "a privileged interest in protecting the identity of those citizens supplying information concerning the commission of crimes" and that the burden was on defendant to show the informant's identity was material to his defense or essential to a fair trial.

I. Since *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, issues of under what circumstances the prosecution must disclose the identity of a confidential informant have seen considerable litigation. In *Roviaro*, the Supreme Court noted the purpose of the government's privilege to withhold an informer's identity is "the furtherance and protection of the public interest in effective law enforcement." This privilege, however, is limited by the "fundamental requirements of fairness." Thus, the Court declared that " * * * where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. * * *

" * * * [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. at 60–62, 77 S.Ct. at 628, 629, 1 L.Ed.2d at 644–646. See also *State v. Battle*, 199 N.W.2d 70, 71–72 (Iowa 1972) and *State v. Lamar*, 210 N.W.2d 600, 602–604 (Iowa 1973).

"All courts accord recognition to the fact that informants are an integral part of and essential to effective law enforcement. It is also understood that whenever an informer's identity is revealed, his future use is usually diminished if not destroyed, and in some instances life put in jeopardy. Resultantly a cloak of protection is customarily accorded the tipster, but that shield is not always inviolable." *State v. Denato*, 173 N.W.2d 576, 577–578 (Iowa 1970).

One of the more significant instances wherein courts have resolved the government's interest is outweighed thus requiring disclosure of identity is where the informant participated in or witnessed the crime. See *Battle* and *Lamar*. It is true the informant here was present during the drug sale and participated in it at least to the extent he was involved in setting up the meeting between Agent Henson and defendant after the latter had contacted him. The informer was an eyewitness and earwitness to the entire transaction. However, the infor-

mant was never the sole witness to the alleged offense; Agent Henson was present at all times. We point out the informer is not the person to whom defendant is said to have sold the amphetamine. It was Henson, not the informer, who was the actual buyer.

In *Melendez v. Superintendent, Clinton Correct. Fac.,* 399 F.Supp. 430, 437 (E.D.N. Y.1975), the court stated:

"The countless cases since *Roviaro* that have struggled with—and often against— its principle do not and certainly should not stray from the principle of requiring disclosure of the identity of the informer if, on the evidence, he is a potential witness who could contradict the testimony of prosecution witnesses—and, by the same token, could support it. If he is such a potential witness, then his testimony belongs in the case, and if his identity is called for by the Petitioner, manifestly it cannot be denied to him except in the service of some important interest, an interest that outweighs the defendant's interest in access to witnesses in the control of the prosecution."

*McLawhorn v. State of North Carolina,* 484 F.2d 1, 5 (4 Cir. 1973), has this statement:

" * * * [D]isclosure of the informant's identity is required where the informant is an actual participant, particularly where he helps set up the criminal occurrence. * * [citing authorities]. Therefore, one of the factors tending to show that the prosecution is not entitled to withhold from the accused information as to the identity of an informant is the qualification of the informant to testify directly concerning the very transaction constituting the crime.

"On the other hand, the privilege of non-disclosure ordinarily applies where the informant is neither a participant in the offense, nor helps set up its commission, but is a mere tipster who only supplies a lead to law investigating and enforcement officers. * * * [citing authorities]."

The court in *People v. Goliday,* 8 Cal.3d 771, 106 Cal.Rptr. 113, 118, 505 P.2d 537, 542–543, held two informers were "material

witnesses on the issue of guilt" *since* they were "eyewitness participants" to the drug sale.

In short, it would appear where an informer is a witness-participant, disclosure will almost always be material to an accused's defense. See *United States v. Barnes,* 486 F.2d 776, 778–779 (8 Cir. 1973). Furthermore, the government's interest in secrecy logically recedes in the witness-participant situation. It was pointed out in *State v. Debarry,* 86 N.M. 742, 527 P.2d 505, 506, that "the state's interest here is, as always, the protection of the 'cover' of important informers. That interest is less in cases where the police specifically decide to take the informer with them when they make a deal. As *United States v. Day,* * * * [384 F.2d 464 (3 Cir. 1967)], points out, the person who deals with the agent knows the informer's identity. Therefore, in this case, since the police decided to 'blow' the informer's cover, in order to make the sale, they themselves lessened the state's interest. * * *."

In *Sims v. State,* 313 So.2d 27, 30 (Miss. 1975), the court noted that to have required disclosure of the informant's identity " * * would not have violated any confidential obligation on the part of the State to keep secret the identity of an undercover or secret informer since, according to the agent's own testimony, participation of the informer was open and not secret. The status of the so-called informer in this case is the same as that of any other eyewitness to the commission of an alleged crime."

The foregoing would support, so to speak, a "per se" rule, i. e., *whenever* the informer is a witness or participant in the crime, the government must always disclose his identity on request or face dismissal. Stated differently, this status would automatically demonstrate the need for disclosure. However, in most cases, the defendant has asserted a defense such as entrapment, misidentification or alibi, or the trial testimony has been conflicting. When these situations are presented, the "need" for disclosure becomes apparent.

■ Although the informant's physical presence at the scene of the alleged crime is of significance, it is not sufficient, standing alone, to hold him a participant and thus affect the nondisclosure privilege. *Miller v. United States*, 273 F.2d 279, 281 (5 Cir. 1959).

■ In the case before us no reason for disclosure was presented other than that the informant was an observing witness to the sale. Disclosure of privileged information concerning evidence or witnesses is not available for the mere asking. Some foundation, that is some initial showing, must be made before privileged matters affecting the substantive issue must be disclosed. *Roviaro v. United States*, 353 U.S. at 61, n. 9, 77 S.Ct. at 628, 1 L.Ed.2d at 645. No defenses were raised at trial or noted here, nor was the testimony in conflict. Defendant has not mentioned a single substantial ground essential to his defense which would make it necessary for the State to disclose the name of the informer. In short, defendant would have this court adopt a per se rule.

■ In this jurisdiction, it should be noted, the burden of showing need for disclosure is upon defendant. Mere speculation an informer may be helpful is not enough to carry the burden and overcome the public interest in the protection of the informer. *State v. Battle*, 199 N.W.2d at 72; *State v. Crawford*, 202 N.W.2d 99, 102 (Iowa 1972); *State v. Lamar*, 210 N.W.2d at 602–603.

In *People v. Goggins*, 34 N.Y.2d 163, 169, 356 N.Y.S.2d 571, 575, 313 N.E.2d 41, 44, cert. den., 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286, the court of appeals stated:

"Bare assertions or conclusory allegations by a defendant that a witness is needed to establish his innocence will not suffice. Instead he must show a basis in fact to establish that his demand does not have an improper motive and is not merely an angling in desperation for possible weaknesses in the prosecution's investigation * * * [citing *Roviaro*]."

Where the accused claimed he was misidentified, and the informant who had set up the crime introduced defendant to the agent and was present when a drug sale occurred, the court held defendant had "demonstrated a reasonable possibility that the anonymous informant could give evidence on the issue of guilt which might result in his exoneration." More generally, it was declared "an appellant seeking to overcome the state's policy of protecting an informant's identity, has the burden of proving that the informant is likely to have evidence bearing on the merits of the case. * * * [citing authority]. The appellant need not prove that the informer would give testimony favorable to the defense in order to compel disclosure of his identity; nor need he prove that the informer was a participant in or even an eye witness to the crime. His burden extends only to a showing that, in view of the evidence, the informer would be a material witness on the issue of guilt which might result in exoneration and that nondisclosure of his identity would deprive the defendant of a fair trial. * * * [citing authority]." *State v. Tuell*, 112 Ariz. 340, 541 P.2d 1142, 1145. See also *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 312 A.2d 434, 438.

In the present case there was absolutely no showing the informant possibly knew anything "which might result in exoneration." A Missouri court of appeals has noted while some decisions hold where an informant participates in a crime his identity should be disclosed, " * * * participation alone is not sufficient to require disclosure. Analysis of these decisions indicates that where there is participation plus other factors, such as mistaken identity, contradictory testimony, or a denial of the accusation, or where the informant is the sole witness, then for purposes of fairness the identity may be required to be disclosed. * * *." *State v. Taylor*, 508 S.W.2d 506, 512 (Mo. App.1974).

In *People v. Marquez*, 546 P.2d 482 (Colo. 1976), the informer arranged a meeting between defendant and the agent, and both proceeded to defendant's home where the informer stated they were there to purchase drugs and asked defendant if he had

them. Another person was present but was not called to testify. Defendant neither testified nor presented any witnesses. There was no showing how disclosure would assist the defense. The Colorado court, en banc, listed "some factors" to consider in whether there should be disclosure: " * * whether the informant was an eyewitness and earwitness to the criminal transaction and whether the informer himself is available or could, in the exercise of reasonable diligence, be made available; whether other witnesses to the transaction are in a position to testify; *the likelihood that the testimony of the informer will vary significantly from that of other available or potentially available witnesses*; whether the defendant himself knows the identity of the informant or could without undue effort discover his identity; whether the informant was deeply or only peripherally involved in the criminal transaction. And while, as the Supreme Court noted in *Roviaro*, the desirability of calling a witness is a matter for the accused rather than for the government, *the accused must at least make some minimal affirmative showing of this need for disclosure. * * ** [citing authority]. It would defeat the purpose of the balancing process to require such disclosure upon the defendant's unsupported assertion that he desires it." 546 P.2d at 485. (Emphasis supplied).

*Commonwealth v. Swenson*, 331 N.E.2d 893, 899 (Mass.1975), has this statement:

" * * * Certainly the trial judge is charged with the duty of protecting a defendant's rights. However, the judge is not a seer who can forecast the scheme of the defense and in many cases, such as this one, he cannot be required to assess the need for disclosure, or to balance the respective interests as the defendant suggests, without some guidance by defense counsel. * * * [citing authority]."

There is a strong indication defendant knew the informant. Defendant initially telephoned the informer prior to the sale of amphetamines. While defense counsel may not have known the informer's identity, " * * * there should have been some showing defendant was not acquainted with him. Defendant himself could have taken the stand for that purpose * * * [at the hearing on the motion to disclose]. His testimony could not have been used against him in trial on the issue of his guilt. * * [citing authority]." *State v. Grady*, 215 N.W.2d 213, 215 (Iowa 1974).

In view of defendant's failure to make some minimal affirmative showing of a need for disclosure this court concludes the public interest in protecting the flow of material information to the state's law enforcement agencies outbalances the need for disclosure to defendant when the facts shown by the present record are considered in light of the authorities cited herein and the "flexible" standards as set forth in *Roviaro*.

The case is

Affirmed.