STATE of Iowa, Appellant,

v.

Steven Wayne HOWELL, Appellee.

No. 62955.

Supreme Court of Iowa.

March 19, 1980.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Lee E. Poppen, Wright County Atty., for appellant.

Brian R. Johnsen, Humboldt, for appellee.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN, and LARSON, JJ.

HARRIS, Justice.

Steven Wayne Howell was convicted of and sentenced for possession of a schedule II controlled substance (amphetamines) with intent to deliver in violation of sections 204.206(5) and 204.401(1), The Code 1975. The State appeals from Howell's resentence to five years imprisonment with probation after a term of 180 days at a "community correctional residential facility." Howell cross-appeals from his conviction, assigning error in various pretrial, trial, and post-trial rulings. We reverse the conviction and remand the case for a new trial.

After the guilty verdict was returned Howell requested an accommodation hearing and sought unsuccessfully to waive a jury trial there. The jury again found against Howell.

Howell first received a sentence of five years imprisonment, reduced to a term of six months in jail and five years probation. Both parties filed notices of appeal. Thereafter, by agreement between Howell and the State, both appeals were dismissed.

Nearly two years later an application for hearing on revocation of probation was made because of Howell's violation of probationary rules. Hearing on that application was held October 27, 1978, at which time his sentence was declared void and resentencing was ordered. The original sentence was invalidated by our opinion in *State v. Harris*, 251 N.W.2d 483, 484 (Iowa 1977). In *Harris* we held that section 789A.1(2), The Code 1975, precludes the imposition of probation with a preliminary term of confinement. *See also* § 907.3(2), The Code 1979.

Howell asserted that the State was estopped by the bargain from seeking a new sentence. He also claimed that the resentencing denied him due process guaranteed by the state and federal constitutions.

Believing that, under our holding in *Harris*, it had the power to do so, the trial court, on December 28, 1978, resentenced Howell to five years imprisonment, suspended with probation after 180 days, at the residential facility. Both parties appeal.

▬ I. For two reasons the State is clearly correct in asserting that the trial court was without power to grant probation either as a part of defendant's original sentence or resentence.

The first reason is statutory. Under sections 204.401 and 204.410, The Code 1975, Howell's sentence should have been "imprisonment in the penitentiary for not to exceed five years and . . . a fine of not more than one thousand dollars." The provision for mandatory imprisonment was retained in sections 204.401, 204.410, and 204.413, The Code 1979. According to section 789A.1, The Code 1975, the trial court was expressly denied the power to suspend sentence and place on probation any defendant

found guilty of possession of a schedule I or schedule II controlled substance with intent to deliver for profit. This prohibition was retained when section 789A.1 was re-enacted into the new criminal code as section 907.3 The Code 1979.

▬ The State's position is also supported by our case law. Iowa courts hold no inherent power to grant probation. Probation may be granted only where, and to the extent, it is authorized by statute. *State v. District Court (Cass County)*, 248 Iowa 250, 254, 80 N.W.2d 555, 557 (1957). Accordingly a trial court cannot avoid a statutory mandate to impose a period of imprisonment.

Howell responds to these prohibitions by pointing to the bargain he made with the State soon after his original sentence. He and the State had both appealed. As a result of an agreement both appeals were dismissed and Howell served six months in the county jail. He now argues that, having served the term under his original sentence, it would violate due process to revoke the bargain and impose a five-year penitentiary term. In somewhat the same vein he separately argues that the State is estopped from now challenging the bargain.

Howell's constitutional argument rests on the general interdiction in our sentencing cases against "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *State v. Drake*, 259 N.W.2d 862, 867 (Iowa 1977), quoting *State v. Delano*, 161 N.W.2d 66, 74 (Iowa 1968). *Drake*, however, concerned only a delay in resentencing. It did not involve an invalid sentence. *State v. Oxberger*, 255 N.W.2d 138, 139–40 (Iowa 1977); *State v. Wiese*, 201 N.W.2d 734, 737 (Iowa 1972). Similarly, *State v. Taylor*, 254 Iowa 94, 137 N.W.2d 688 (1965), cited by Howell, does not support his position. *Taylor* differs on the facts because Taylor had not completed his sentence when he was given an increased term by the trial court. In upholding the

trial court we carefully restricted the holding to the facts in *Taylor.* We pointed out, "We make no determination at this time on the power of the court to correct an invalid sentence after it has been fully executed." 258 Iowa at 97–98, 137 N.W.2d at 689.

In arguing that the State is estopped from contesting what he calls the "appeal bargain" of 1976 Howell seeks to draw an analogy to the rule of enforceability of plea bargains. *State v. Edwards,* 279 N.W.2d 9, 11 (Iowa 1979); *State v. Kuchenreuther,* 218 N.W.2d 621, 623–24 (Iowa 1974); *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971).

We do not believe Howell can prevail either on his due process or estoppel contentions. Because it was invalid, the sentence upon which he relies was outside the power or discretion of the sentencing court. There is no hint of deception. Apparently the presiding judge, the prosecutor, and Howell's own counsel honestly misapprehended the power of the trial court. Surely it should not lie within the authority of bargaining counsel and a willing judge to thus reshape the parameters of allowable punishment. If Howell were to prevail upon either of these contentions we would be left the anomalous situation in which parties could make their own law whenever a judge could be persuaded to allow it.

Here, of course, Howell has invested the period of his incarceration. This may or may not prove to have been wasted, depending on whether he is convicted upon retrial. Another form of prejudice, the loss of opportunity to appeal within the allowable time, will be cured in the following divisions. As will be seen we shall consider his assignments on their merits.

■ II. Howell argues that the trial court should have suppressed evidence obtained during a search.

On August 2, 1975, a search warrant was issued against a Wright County farmhouse at which Howell was staying. The information upon which the warrant was based did not identify the informant. The informant did not appear before the magistrate and the warrant made no endorsement or other showing of the informant's reliability. On the basis of the warrant a raid was conducted during which Howell was found in bed. From that bedroom the officers seized a quantity of drugs in tablet form which were found in his female companion's purse. More pills were seized in the living room.

By appropriate motions Howell has consistently challenged the use of the evidence obtained during the search. Two interrelated grounds are presented, the magistrate's failure to perform his statutory duty under section 751.4, The Code 1975 (now section 808.3, The Code 1979), and the lack of probable cause for the search.

Where an informant is employed, section 751.4 requires that the issuing magistrate "shall only identify the peace officer to whom the information was given and that he finds that such informant had previously given reliable information." The application for the search warrant here identified the affiant, deputy sheriff Vernon Elston of Wright County. Howell denies, however, that the application sufficiently showed the magistrate's satisfaction with the reliability of the informant. He points out that the issuing magistrate must himself endorse the informant's reliability on the application. "[I]f the basis for issuance of the warrant is supplied wholly or in part by an informant, the magistrate shall likewise endorse on the application . . . an abstract of the factual showing made, under oath or affirmation, upon which the magistrate determined reliability of the informant." *State v. Schlenker,* 234 N.W.2d 142, 144 (Iowa 1975), quoting *State v. Spier,* 173 N.W.2d 854, 862 (Iowa 1970). According to the face of the application the requirement of endorsement by the magistrate was not met.

The State argues there was substantial compliance, citing *State v. Valde,* 225 N.W.2d 313 (Iowa 1975). In *Valde* an informant personally appeared before the magis-

trate and gave sworn testimony. The name and address of Valde's informant were omitted from the endorsement of the application. The omission by the magistrate in *Valde* was because of his reading of the portion of section 751.4 applicable here ("[T]he magistrate shall only identify . . that he finds that such informant had previously given reliable information."). Notwithstanding the magistrate's mistake we found substantial compliance because of the obvious lack of any prejudice from the error because of the presence of the informant before the magistrate. 225 N.W.2d at 316–17. Here by contrast, in the absence of the required endorsement, there is no showing of any evidence which would justify issuing the warrant.

We believe and hold that Howell must prevail on his claim that the search warrant was improperly issued for failure to comply with the statute. It is not necessary to consider his claim there was no probable cause.

■ III. The trial court refused Howell's application that the informant be identified. Howell assigns this refusal as error asserting that, had he known the identity of the informant and thereby been able to call him to the stand, he could have shown other persons were responsible for the presence of the drugs. Howell concedes he bears the burden of establishing the deed of the identification. *State v. Kantaris*, 280 N.W.2d 389, 391 (Iowa 1979), quoting *State v. Sheffey*, 243 N.W.2d 555, 559 (Iowa 1976). We believe Howell has not borne his burden. *Sheffey* (which *Kantaris*, 280 N.W.2d at 391, calls "[t]he leading case") describes the balancing process permitted by *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

In *Sheffey* we imposed two requirements for disclosure. The defendant must begin by showing beyond mere speculation that he would benefit from a disclosure. This can be done by asserting he was misidentified and demonstrating the reasonable possibility that the informant's testimony might help exonerate him. 243 N.W.2d at 559. Howell relies on an alibi defense. We think he has established the first requirement, that the informant's testimony could assist him.

Howell's difficulty is with the second requirement. *Sheffey* also requires the defendant to show the specific essential course the informer's testimony would take. In *Kantaris* we said, "By failing to aver anything but an inability to reconstruct the events of those dates, Kantaris has not made the showing of actual need to require disclosure." 280 N.W.2d at 391.

Howell's position is even more difficult. The testimony of Grandgeorge, Walker, and Howell himself already supported his alibi defense. He was in a considerably less needy position than Kantaris was.

The trial court did not err in denying Howell's request for production of the informant.

■ IV. Howell also challenges a trial court ruling which permitted him to be cross-examined about his attorney's statement at his bond reduction hearing. The attorney said Howell resided in the farmhouse. As a general rule "admissions of an attorney, whether written or oral, if relevant and material and within the scope of his employment, are admissible against his client." *Suntken v. Suntken*, 223 Iowa 347, 356, 272 N.W. 132, 137 (1937); *see State v. Shepard*, 247 Iowa 258, 267, 73 N.W.2d 69, 74 (1955).

But according to a line of cases, beginning with *Treadway v. The S. C. & St. P. R. Co.*, 40 Iowa 526 (1875), the general rule does not apply to casual or conversational remarks of counsel.

Admissions of an attorney, in order to bind his client, must be distinct and formal, and made for the express purpose of dispensing with formal proof of a fact at the trial. Those which occur in mere conversations, though they relate to matters in issue in the case, cannot be re-

ceived in evidence against the client. [Authority.]

40 Iowa at 527. We quoted *Treadway* with approval in *Dugan v. Midwest Cap Co.*, 213 Iowa 751, 755, 239 N.W. 697, 699–700 (1931).

 Howell prevails on this assignment for still another reason. *State v. Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972), supports his contention that the statement was hearsay as to him. In *Kelsey* we held the "tacit admission" exception to the hearsay rule was self-incriminatory and unconstitutional. Howell was entitled to remain silent as he did at the time of his attorney's remark. He had no duty to disclaim the remark. "[M]ere silence by defendant at or about the time the challenged statement was made would not, alone, render the same admissible as to him." *State v. Menke*, 227 N.W.2d 184, 187–88 (Iowa 1975).

The trial court erred in allowing cross-examination of Howell on his attorney's so-called admission.

V. In a separate assignment Howell presents the contention that the trial court erred in allowing rebuttal testimony concerning his alleged prior sales of drugs. The question is not so much of the permissible scope of rebuttal evidence (*see State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978)), as one of the admissibility of evidence of prior crimes.

 We have often recited the rule on the admissibility of evidence of other crimes. For example, in *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978), we stated:

[W]e have recognized the general principle that evidence which shows commission of crimes other than the one with which a defendant is charged is inadmissible. We have also recognized exceptions permitting such evidence when it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of

the person charged with commission of the crime.

Under this rule evidence of the kind challenged here is generally inadmissible. In *State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971), we held:

We should discuss separately the only exception which could possibly permit the introduction of the disputed evidence— the existence of a common scheme, plan, or system. It is not enough that the defendant committed other crimes of the same nature unless in some way each has a bearing on the other. [Authorities.]

Assuming the evidence shows what the State claims for it, the most that can be said is that defendant first stole soybeans from one of the other farms and, being successful, was emboldened to engage in other thefts until he ultimately came under suspicion. Nowhere is there any suggestion that one crime was dependent upon or connected with any of the others. Each was, under this record, a separate and independent crime.

It appears beyond dispute that the State sought to introduce evidence of other crimes to persuade the jury that a person who had stolen soybeans on several prior occasions was very likely to have stolen them on this occasion also—the very rationale the rule is designed to guard against.

We make no exception in cases of drug sales. *State v. Klauer*, 226 N.W.2d 803, 804 (Iowa 1975); *State v. DeAnda*, 218 N.W.2d 649, 651 (Iowa 1974); *State v. Mullen*, 216 N.W.2d 375, 377 (Iowa 1974).

Although the trial court has considerable discretion on the subject of rebuttal testimony, *Bakker*, 262 N.W.2d at 543, an abuse was shown here.

 VI. Howell also contends he should have been allowed to waive a jury on his accommodation hearing and that the State should not have been allowed to introduce in that hearing all evidence from his initial trial.

Under *State v. Monroe*, 236 N.W.2d 24, 37 (Iowa 1975), Howell was entitled to a jury trial on the accommodation question. But he argues that *Monroe* gives him only the opportunity for a jury trial and does not compel one. The State, however, is right in insisting that Howell's contention is answered by *State v. Fagan*, 190 N.W.2d 800, 801 (Iowa 1971). *Fagan* upheld the constitutionality of sections 777.16 and 780.23, The Code 1971. Those sections provided that most criminal offenses had to be tried by a jury. Our holding in *Fagan* controls here. We parenthetically note that Iowa R.Crim.P. 16 has since provided for a waiver of juries in criminal trials. That right of waiver did not exist for these proceedings which, as we have pointed out, arose prior to the advent of the new criminal code. *State v. Henderson*, 287 N.W.2d 583 (Iowa 1980).

 We also believe the trial court did not err in admitting the evidence of the original trial in the accommodation hearing. Howell claims this denied his right to confront witnesses and to cross-examine the State's witnesses on the issue of accommodation. Howell had confronted those witnesses at trial and had the right to cross-examine them then. The State did not introduce any evidence of accommodation at trial and called no further witnesses at the hearing. The trial court reserved to Howell the right "to call his own witnesses" to testify in the hearing. There is nothing to indicate Howell was denied the opportunity to examine or cross-examine any witnesses he wished, including all those who had testified at the trial, in the accommodation hearing.

VII. Howell's other assignments include a claim of prosecutorial misconduct. That claim arises from matters not likely to recur on retrial. To discuss it in detail would unduly extend this opinion.

 Howell also asserts that his motion for directed verdict should have been sustained. We believe that, considering all the evidence at trial, the motion for directed verdict should have been overruled. The question then arises as to whether we should review Howell's motion for directed verdict after excluding all the evidence we have held was improperly admitted. We believe and hold that the motion for directed verdict should not be so reviewed. The State may have been prompted to withhold some evidence on the basis of the evidentiary rulings we have reversed. We should not presume that the State would be unable or unwilling to produce other evidence upon a retrial. The better rule accords the State such an opportunity under these circumstances. 24B C.J.S. Criminal Law § 1950(2) at 374–75. *Compare State v. Hillsman*, 281 N.W.2d 114, 117 (Iowa 1979), *with State v. Miller*, 204 N.W.2d 834, 843–44 (Iowa 1973).

The judgment of the trial court is reversed and the case is remanded for a new trial.

REVERSED AND REMANDED.