Lonnie SCHOOLEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Feb. 16, 1982.

Jack Emory Farley, Public Advocate, R. Neal Walker, Asst. Public Defender, Com. of Kentucky, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENSON, Justice.

Lonnie Schooley was convicted on a charge of first degree burglary KRS 511.-020 and sentenced to twenty years' imprisonment.

The scenario which precipitated the principal issue in this case occurred when a city police officer at the county jail received a telephone call from the sheriff's wife. The sheriff's wife informed the officer that she had just received a telephone call that someone had broken into the Western Auto Store and was just leaving, driving a maroon car. The sheriff and a state trooper were present at the county jail when this information was received. The three officers hurried out of the jail and observed a maroon car passing. The state trooper in his car and the sheriff and the city police officer in another car set out in pursuit. The maroon car was stopped and the two occupants, Schooley and another individual, were ordered out of the car. A number of guns, knives, watches, a television set, and other items were observed in the car. Schooley and the other individuals were searched and placed under arrest.

The owner of the Western Auto Store was contacted and identified the guns and other articles in the car as being from the Western Auto Store. Schooley was wear-

ing a pair of white gloves, the same type as sold by the Western Auto Store.

The proof at trial developed that entry to the Western Auto Store was effected by cutting a hole through the roof and ceiling and that the ceiling was insulated with fiber glass "blown insulation." There was testimony that Schooley had particles of the insulation on him when arrested.

Schooley did not testify but introduced a stipulation that the jailer, who was not present, would testify that he did not see any insulation on Schooley when he was lodged in the jail.

Schooley argues that he was entitled to the name of the informant, relying principally on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *Burks v. Commonwealth*, Ky., 471 S.W.2d 298 (6th Cir. 1971).

*Roviaro* was charged with selling heroin to one John Doe. During the trial John Doe's part in the charged transaction with Roviaro was described by government witnesses. And a government witness hidden in the trunk of John Doe's car related inculpatory conversation between Roviaro and John Doe.

The court concluded that under these circumstances invoking the informer's privilege was unfair and that the identity of the informant should have been disclosed, the reasons being that John Doe had set up the criminal transactions, was the sole participant other than Roviaro in the transaction charged, and that John Doe's participation was testified to at trial, including his conversation with Roviaro.

In summing up the reasons for the informer's privilege and reasons for the holding, the court said in *Roviaro, supra,* at pp. 59–62:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher v. United States*, 305 U.S. 251, 254 [59 S.Ct. 174, 176, 83 L.Ed.

151]; *In re Quarles and Butler*, 158 U.S. 532 [15 S.Ct. 959, 39 L.Ed. 1080]; *Vogel v. Gruaz*, 110 U.S. 311, 316 [4 S.Ct. 12, 14, 28 L.Ed. 158]. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

\*    \*    \*    \*    \*    \*

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court must require disclosure and, if the Government withholds the information, dismiss the action.

\*    \*    \*    \*    \*    \*

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

*Burks* involved a situation similar to *Roviaro*. In *Burks* the informant was described as an undercover "employee" of the police who participated in the purchase of heroin from Burks and Miller. At the trial Commonwealth witnesses testified as the "employee's" role in the transaction. We held that when an informer participates in or places himself in the position of observing a criminal transaction, he ceases to be merely a source of information and becomes a witness and the Commonwealth is required to disclose his identity.

Applying the balancing test in *Roviaro* to the circumstances of this case, we are of the opinion that disclosure is not required, that disclosure of the informant was not necessary to a fair determination of guilt or innocence, nor would disclosure have been helpful to the defendant.

■ Generally we find that where the informer participated in the criminal transaction, both Federal and state decisions require disclosure on the theory of fundamental fairness. *United States v. Barnett*, 418 F.2d 309 (6th Cir. 1969), and *United States v. Barnes*, 486 F.2d 776 (8th Cir. 1973).

On the other hand, we find that generally where the informer gives the police a "tip" or a "lead" which provides information enabling police to identify and charge a defendant, and the informant's information is not used at trial, disclosure is not required. See an extensive annotation on this subject in 76 A.L.R.2d p. 267 et seq. and A.L.R.2d Later Case Service (76 A.L.R.2d pp. 262 to 345). See also *Phillips v. Cardwell*, 482 F.2d 1348 (6th Cir. 1973).

The thread that runs through all these decisions is that there must be some showing that disclosure will be relevant and helpful to the defense. *Roviaro, supra*, and *United States v. Skeens*, 449 F.2d 1066 (D.C. Cir.1971).

Here Schooley made a motion for disclosure, stating that failure to disclose amounts to a denial of due process rights.

*United States v. Willis*, 473 F.2d 450 (6th Cir. 1973), affirmed a district court's denial of a motion for disclosure on the ground that the requested disclosure was not supported by any allegations that the requested disclosure would assist Willis in his defense on the merits.

Were we to agree with Schooley's argument on disclosure, it would mean that the informer privilege, deemed essential for the public interest, would for all practical purposes be abolished.

■ The Federal courts and the state courts generally (76 A.L.R.2d 267) require that the accused requesting disclosure make a showing that justifies an exception to the privilege of nondisclosure (A.L.R. Later Case Service, *supra* ). Mere speculation that identity of an informant is necessary to a defense is not enough. *Skeens, supra.*

■ Here in view of the brief time between the burglary and the arrest a short distance from the Western Auto Store and the overwhelming evidence of guilt, disclosure of the informer could not possibly have been relevant to Schooley's defense, nor would such disclosure assist in a fair determination of the case.

"Tips" or "leads" furnished in the fashion employed here might in some extraordinary circumstances require disclosure to assure a fair trial, but not ordinarily, and not in this case.

An allegation that disclosure would be helpful to the defense is necessary. Here Schooley failed to allege that disclosure would be helpful to his defense.

The informant here did not wish to be identified. We feel this is the usual situation. Public policy has long recognized the privilege for informers. This public policy seeks to protect the public interest in effective law enforcement. It recognizes the obligations of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity encourages them to perform that obligation. The privilege is designed to protect the public interest, and not to protect the informer.

■ The problem always present in this type case is balancing the public interest in protecting the flow of information against the accused's right to prepare his defense. Thus the privilege must give way when it comes into conflict with the fundamental principle that a person accused of a crime is entitled to a full and fair opportunity to defend himself. For this reason, whether nondisclosure is justified depends on the facts and circumstances of each case and points up the necessity of a requirement that there be some plausible showing from the circumstances in the case that the informant's testimony would be relevant and aid

in the defense. This is much easier to show in a case where the informant participated in the criminal transaction, etc., than the "tip" or "lead" type information where the information is not used at trial in any respect.

The other arguments by Schooley do not merit discussion.

The judgment is affirmed.

PALMORE, C. J., and AKER, CLAYTON, STEPHENS, STEPHENSON and STERNBERG, JJ., sitting.

All concur.