JOHN R. LYNCH, Appellee, v. EGYPT COAL COMPANY, Appellant.

**EVIDENCE:** Res Gestae—Nondetail of Past Occurrence. Statements
1  of an injured person, some two minutes after an injury, and relating thereto, reviewed, and held admissible as part of the *res gestae*.

**EVIDENCE**: Admissions—Negotiations for Peace. Statements by one sought to be held liable for a personal injury, to the effect that, if plaintiff would not prosecute an action against defendant, he (defendant) would contribute to a subscription for the relief of plaintiff, and would permit a subscription to be taken for plaintiff among defendant's workmen, are not admissible against defendant as an admission of liability.

**MINES AND MINERALS**: Negligence—Implied Notice of Defect. A mine owner may be held to know of the defective condition of his mine, even though he has no *actual* notice of such condition.

*Appeal from Appanoose District Court.*—SENECA CORNELL, Judge.

FEBRUARY 17, 1921.

ACTION to recover damages for injury received in the employment of defendant. Verdict and judgment for plaintiff, from which defendant appeals.—*Reversed and remanded.*

*A. B. Dudley* and *H. E. Valentine,* for appellant.

*Wilson & Smith,* for appellee.

ARTHUR, J.—Plaintiff claims that he was injured while being transported, with other employees, through the main entry of the mine in an empty pit car, hauled by means of a tail rope and engine; that he was struck across the lower part of his back and hips by a timber or prop, with sheave wheel attached, the prop being used in the entry for the purpose of holding the sheave wheel, over which ran a cable, or tail rope, which was used to pull pit cars through the entry. The action is based on the negligence of defendant in permitting the timber or prop which held the sheave wheel to become loose, to such an extent that it fell over and hit the plaintiff.

Defendant denied any negligence, and sets up a counterclaim on several grounds, one cause of action alleged in the counterclaim being that the plaintiff conspired with several other of its miners to cause these miners to absent themselves and depart from the service of the defendant and to strike,

which closed down the mine of the defendant for several months, on account of which defendant suffered damage.

The court submitted to the jury the question of defendant's negligence and plaintiff's injury, and refused to submit to the jury the portion of defendant's counterclaim relating to a strike. The jury returned a verdict in favor of plaintiff for $1,100. Evidence was offered by plaintiff tending to show that defendant company hauled its employees into the mine as they went to work, in a "trip" (train) of empty cars; that the cars were hauled by a tail rope system, by which a tail rope is attached to the inner end of a trip of cars, is run a distance into the mine, and passes over a bull wheel, and runs from this wheel back along the side of the entrance to a drum in the engine house; that this tail rope runs over sheave wheels attached to props, which props are wedged between the top and bottom rocks along the side of the entry, the sheave wheels being as close to the top rock as is practicable; that, on the morning on which plaintiff claims he received his injury, he was riding in to work, with three other miners, in the fourth car from the front end of the trip, and was sitting on the side of the car next to the side of the entry on which the tail rope ran; that the trip or train of cars was in charge of a tail rope rider, who rode along in the first car. As the trip approached the last prop holding the tail rope, the tail rope driver noticed that this prop holding the sheave wheel had become loose at the top, and was wobbly, and stopped the trip, the car in which plaintiff was riding being about opposite the prop when the trip stopped.

Plaintiff's claim is that the tail rope slackened sufficiently to allow the heavy sheave wheel to hit him on the back and hip, injuring him to such an extent that he was compelled to lose time and suffer much pain, and that his injury was likely to be permanent.

Evidence was offered by defendant to dispute plaintiff's claim that he was injured by the falling of the prop, by showing that he was hurt by some slate which fell on him some time before. Defendant sought to relieve itself of any negligence by introducing the testimony of other employees that the post was not loose on the last trip prior to the happening of the accident. The trip driver, who went back and forth past the post 36 times

the last day the mine worked, prior to the accident, testified that the post was not loose. A mule driver who drove his mule into the mine, the morning of the accident, ahead of the main trip, passed the post in question, and saw nothing wrong with it, and testified that the post was not leaning over; for if it had been, he could not have gone by. Defendant's claim was that the plaintiff was not injured at all by this post or prop or wheel falling on him, and undertook to demonstrate that he could not thus have been injured.

The court overruled a motion made by defendant to direct a verdict in its favor, at the close of plaintiff's evidence, on the ground that the evidence failed to show any negligence on the part of the defendant, and afterwards overruled defendant's motion to set aside the verdict as not being supported by the evidence.

As an affirmative defense, defendant alleged a conspiracy between plaintiff and other of defendant's miners which resulted in a strike, and offered evidence in support of it. Such evidence tended to show that, in January, 1913, there was a dispute between the check weighman, elected by the miners, and the superintendent of defendant company; that plaintiff was, at that time, a member of the pit committee, which committee had charge of all disputes between the mine operators and the miners, and that, as such, plaintiff did most of the negotiating and talking with the superintendent regarding the disputes with the check weighman, and told the men to quit work; that, after the mine was closed down because of the strike, plaintiff tried to persuade one of the men who was working at the mine, and who was not a member of the union, to quit work; that, the night before the mine quit, they held a meeting, called by the plaintiff, who was president of the committee, at which meeting the plaintiff was present; that, the morning after the meeting, the plaintiff met the miners at the mouth of the mine, and told them that there would not be any work, and the men went home; and that plaintiff also told the superintendent that there would not be any work until the check weighman, who had been discharged by the superintendent, was put back, and also told the men that A. V. Vennell (the superintendent) would not put Smith (the weighman) back, and that they would not go to

work. Defendant offered evidence to show that, because of this strike, the mine was closed from January 21, 1913, until April following; and that, in addition to the loss of profits, the defendant spent between $8,000 and $10,000 to put the mine in repair after the strike.

The court, on motion of plaintiff, withdrew from the jury all the testimony relative to the suspension of the mine, and all testimony tending to establish the work and expense in cleaning up the mine.

Assignments of error 1 and 2 are directed to the admission of statements of plaintiff made after the accident, testified to by witnesses Hood and James. This testimony was admitted, as

1. EVIDENCE: *res gestae:* nondetail of past occurrence.

being part of the *res gestae*. Defendant claims that the statements testified to were not part of the *res gestae*, but were mere narratives of what had occurred.

There is no confusion in announcements by this court of the rule. The difficulty is in the application of the rule to a particular statement offered in evidence. In *Armil v. Chicago, B. & Q. R. Co.*, 70 Iowa 130, this court said:

"It is difficult, if not impossible, to say definitely what constitutes a part of the *res gestae*. No absolute rule is or can be established in relation thereto. A discretion is and must be reposed in the court, and therefore each case must largely depend upon the circumstances surrounding the transaction or *res gestae*."

In *Clark v. Van Vleck*, 135 Iowa 194, this court said:

"The true test is: Were the declarations so closely connected with the transaction in question as to be, in effect, a part of it? Were they the natural and spontaneous utterances of the declarant, and so made as to indicate no opportunity for premeditation or design? They must also relate to immediate and present events, and not be merely a narrative of a past transaction or statement of opinion. And as a general rule, the admissibility of such evidence lies largely within the discretion of the trial court. *Christopherson v. Railroad*, 135 Iowa 409. The real test seems to be the spontaneity of the declaration. *Waldele v. Railroad*, 95 N. Y. 274 (47 Am. Rep. 41)."

The witness Hood testified that, when the accident occurred,

he was two or three cars ahead of the car Lynch was on, and that the train was stopped as quickly as they could stop, running 40 or 50 feet before it was stopped, and that he went back to where Lynch was, and heard Lynch make the declarations which he (Hood) testified to.

Witness James testified that, when the trip (train) on which they were riding stopped, he got out and sat down, and Lynch came along, grunting, and he said to him, "Lynch, what is the matter?" and Lynch said, "The prop back there hit me;" that that was a minute or two after the trip stopped. The declarations testified to occurred so soon after the accident that we think it was not error to admit them as part of the *res gestae*.

Assignments 3, 4, 5, 6, 7, and 8 are directed to admission of testimony of Lynch and Mrs. Lynch as to admissions on the part of A. V. Vennell, one of the owners of defendant company, 

2. EVIDENCE: admissions: negotiations for peace.

as to the liability of the company for the injury occasioned by the accident. Defendant insists that the testimony offered did not refer to liability, but was an offer to compromise, and was not competent. Defendant insists that the conversation, as detailed by the witnesses Lynch and his wife, contained no admission of liability which can be separated from the offer to compromise, so as to make it an independent admission. Mrs. Lynch testified that A. V. Vennell, one of the owners of defendant company, said to her and her husband:

"Well, John, if you sign a paper that you won't prosecute the company, I will let the men go around the mine and gather a subscription for you, and I will head the list with $10, and Mr. Dudley will perhaps do that, or better, and you will get a good subscription."

Lynch testified the same as his wife. At the time of this conversation between Lynch and Vennell, no litigation had been started, and none threatened, and what was said by Vennell seems to have been entirely voluntary.

Appellee urges that the testimony of Lynch and his wife as to the statement made by Vennell was competent, under the holding in *Langdon v. Ahrends*, 166 Iowa 636. In the *Langdon* case, the plaintiff was permitted to show that Allison, in whose

employ defendant Ahrends was, at the time of the accident, after he had learned of the extent of plaintiff's injury, said to plaintiff, "Mr. Langdon, I will settle this with you." We held that the trial court did not err in holding that the statement was an admission by Allison of his liability, and not an offer to compromise, and in admitting the testimony of Langdon above quoted.

We think the testimony of Lynch and his wife as to the statement made by Vennell, superintendent, was not competent, under the holding in the *Langdon* case and other cases. In the *Langdon* case, there was made to the injured party by Allison, who was liable, if anyone was liable, the unequivocal statement, "I will settle this with you." The statement by Allison, testified to, sounded clearly in admission of liability. In the instant case, the statement made by Vennell was for the purpose of averting litigation, and to buy his peace, by helping to raise some money for plaintiff by subscription. The Vennell statement was rather in the nature of an offer to compromise. We think the statement had not in it the element of admission of liability. In its pleading and on the trial, defendant contended that Lynch was not injured at all. We think the statement of Vennell cannot be construed to be an admission of liability, but only an offer to compromise. It is uniformly held that an offer of compromise is inadmissible. *Houdeck v. Merchants & Bankers Ins. Co.,* 102 Iowa 303; *Rudd v. Dewey,* 121 Iowa 454; *Boylan v. McMillan,* 137 Iowa 142; *Rudd v. Dewey,* 139 Iowa 528; *Kurtz v. Payne Inv. Co.,* 156 Iowa 376; *State v. Meier,* 140 Iowa 540.

Counsel indulge in discussion of *res ipsa loquitur,* to some extent. Counsel for defendant insist that the doctrine does not apply. We think it does not apply in this case, and will not advert to it, further than to observe that the court did not submit the case to the jury on that theory.

We have examined the testimony carefully, and we think the court was without error in overruling defendant's motion to direct verdict, and thereby holding that there was sufficient evidence to take the case to the jury. There was the testimony of Hood that the post on which the sheave wheel was fastened, and which post fell, had been loose several days before the acci-

dent, and that it was the same post that hit Lynch; and there was the testimony of plaintiff himself as to the accident. *Mitchell v. Des Moines C. R. Co.,* 161 Iowa 100.

In Assignments 10 and 11, error is claimed because the court withdrew from the consideration of the jury the testimony offered by the defendant in support of its counterclaim for damages, based on plaintiff's instrumentality in causing servants to quit defendant's employment, and damages resulting to its business and property on that account. Assignment 16 involves the same proposition.

We will not set forth the testimony offered by defendant. It is sufficient that we have examined the testimony carefully, and conclude that it was not error to withdraw it from the consideration of the jury.

Assignments 12, 13, 14, and 15 are lodged at the refusal of the court to give instructions asked by the defendant, and the giving of certain instructions by the court. Particularly, the defendant complains of a portion of Instruction 12, concerning the duty of the mine foreman when he finds conditions dangerous. The defendant insists that there was no evidence warranting the giving of this instruction, because there was no evidence that the mine foreman knew of this defect. The portion of the instructions complained of, while not necessary to be given, we think was nonprejudicial in its character, as no claim of negligence was made because of failure to notify the employees of a defect or failure to place obstructions at the defective place; and in Instruction No. 5, the court told the jury explicitly what acts of negligence must be established, to entitle plaintiff to recover.

The propositions involved in other assignments of error have already been discussed, except, perhaps, as some of them relate to appellant's contention that, it being conceded that the defendant had no *actual* notice of the defect alleged,—that is, that the post to which the sheave wheel was attached was loose,—it should not have been submitted to the jury to determine whether the defendant should have known that this prop was loose, because, counsel argue, the only theory upon which the verdict could be allowed to stand is that this particular prop had

3. MINES AND
   MINERALS:
   negligence:
   implied notice
   of defect.

been loose for a sufficient length of time so that defendant, by inspection required by statute, or in the exercise of ordinary care, should have discovered it. Counsel for appellant discuss at length that it was impossible that the prop was loose for any appreciable time before the injury. Witness Hood testified to seeing the prop loose. But counsel for appellant insist that the testimony of Hood cannot be true; that it is in conflict with undisputed facts. The prop was loose at the time of the accident, and it was for the jury to determine whether or not defendant was negligent in failing to make an examination and discovery of the defect, and to determine also whether such admittedly defective condition had existed for such a length of time before the injury as that, in the exercise of reasonable care, the defendant should have discovered such defect and repaired the same.

Because of error in admission of the testimony as to statements of Vennell, over apt objections, we are constrained to reverse. Case is—*Reversed and remanded.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.