**Roger H. MILLER, Appellee,**

v.

**COMPONENT HOMES, INC., Appellant.**

**No. 83–1047.**

Supreme Court of Iowa.

Oct. 17, 1984.

Bruce L. Walker of Phelan, Tucker, Boyle & Mullen, Iowa City, for appellant.

Davis L. Foster of Barker, Cruise & Kennedy, Iowa City, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

LARSON, Justice.

Component Homes, Inc. has appealed from a judgment for commissions, liquidated damages, and attorneys fees in a suit by its former salesman under the "Iowa Wage Payment Collection Law," Iowa Code chapter 91A. We affirm.

The plaintiff, Roger Miller, worked for Component Homes, Inc., as a regional sales manager in connection with a job known as

the Glenbrook Project, a government housing development in Cedar Rapids.

Near the beginning of Miller's employment, he signed a "Regional Sales Manager Agreement." The written agreement stated that Miller was an independent contractor with no authority to act on behalf of Component Homes. Officers of Component Homes testified that this clause was important because they had no control over managers and because it relieved Component Homes of any obligation to pay employee benefits. (Much of the controversy in this case turns on Miller's status because the wage collection act provides remedies only for employees—not independent contractors. *See* Iowa Code §§ 91A.2(3) and 91A.8.)

Early in the spring of 1981, these parties fell into disagreement over the amount of compensation due Miller and the quality of his work. Miller was told that he would not be paid a commission on the Glenbrook Project despite his extensive work on it for a period of nearly seven months. On May 18, 1981, Component Homes notified Miller that the contract would be terminated at the end of thirty days. Component Homes contends, however, that Miller had actually stopped working full time for them in March of 1981.

After attempts to negotiate a settlement failed, Miller retained an attorney to pursue the claim for his work on the Glenbrook Project. A contingent fee agreement was negotiated under which he agreed to pay "thirty-three percent of the net recovery" to the attorney. This fee agreement figures prominently in the appeal of this case.

The case was tried to a jury, which found that Miller was an employee of Component Homes, not an independent contractor, and returned a verdict for $39,258.04 in actual and "liquidated" damages under Iowa Code section 91A.8. At a post-trial hearing on Miller's application for attorney's fees under section 91A.8, the court awarded fees of $12,392.26.

The issues which are controlling in this case are: (1) whether the trial court erred in admitting letters concerning a possible settlement of the controversy; (2) whether Iowa Code chapter 91A, the wage collection act, applied to this case; (3) whether the trial court erred in instructing the jury on the employee-independent contractor distinction; and (4) whether the trial court erred in awarding Miller's attorney fees under the provisions of chapter 91A.

I. *The Offer to Compromise.*

■ Component Homes argues the trial court improperly admitted three letters written by Miller offering to settle his differences with Component Homes for $13,000.

> It is a well established principle that proof of an offer to compromise the controversy involved in a litigation, or of the fact that an offer to compromise was made, is inadmissible, apart, at least, from its possible admissibility as independently relevant evidence....

31A C.J.S. *Evidence* § 285, at 722–23 (1964). *See also Lewis v. Kennison*, 278 N.W.2d 12, 14 (Iowa 1979); *Sandman v. Hagan*, 261 Iowa 560, 571, 154 N.W.2d 113, 120 (1967); *Lynch v. Egypt Coal Co.*, 190 Iowa 1272, 1278, 181 N.W. 385, 387 (Iowa 1921); Fed.R.Evid. 408.

■ It is also stated, however, that "[t]he offer of settlement or compromise exclusionary rule is designed to exclude this evidence only when it is tendered as an admission of weakness of the other party's claim or defense, not when it is tendered to prove a fact other than liability." *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 921 (Iowa 1979). *Accord*, Fed.R.Evid. 408; Iowa R.Evid. 408; *McCormick's Handbook of the Law of Evidence* § 274, at 664 (2d ed. E. Cleary 1972); 31A C.J.S. *Evidence* § 286 (1964).

■ There are several reasons for the exclusion of such evidence. One of the reasons is that it does not necessarily reflect the belief that the adversary's claim has merit, "but rather a belief that the further prosecution of that claim, whether well founded or not, would in any event

cause such annoyance as is preferably avoided by the payment of the sum offered. In short, the offer implies merely a desire for peace, not a concession of wrong done[.]" IV J. Wigmore, *Evidence in Trials at Common Law* § 1061, at 36 (1972).

■ The public policy favoring settlement of disputes is another reason for excluding evidence of compromise. *See Yeager v. Durflinger*, 280 N.W.2d 1, 6 (Iowa 1979); *Lewis*, 278 N.W.2d at 14; Fed. R.Evid. 408, Advisory Committee Note. Stated another way, "since the law favors the settlement of controversies out of court, a person is entitled to endeavor to 'buy his peace' without danger of being prejudiced in case his effort should fail; hence, any communications made toward that end will be regarded as privileged." 31A C.J.S. *Evidence* § 285, at 725–26 (1964).

■ The situation here is somewhat unique. The letters had not been written by an adversary attempting to "buy his peace"; they were written by Miller himself. They could not, therefore, be objectionable as an attempt to establish an admission of liability by Component Homes.

■ Furthermore, these letters had probative value quite aside from any consideration of admissions. In attempting to prove a violation of chapter 91A, Miller was required to show his employer's failure to pay was intentional. *See* Iowa Code § 91A.8. The letters demanding the $13,000 in commissions tended to show that Component Homes had not inadvertently failed to pay him.

The trial court properly admitted these letters.

II. *The Wage Payment Collection Act, Iowa Code Chapter 91A.*

Iowa Code section 91A.8 provides:

When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

The act by its terms protects only "employees"—not independent contractors. The act defines an employee as

a natural person who is employed in this state for wages by an employer. Employee does not mean a licensed person employed on a contractual basis for professional services.

Iowa Code § 91A.2(3).

"Wages" are defined as

compensation owed by an employer for:

a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.

Iowa Code § 91A.2(4).

In arguing that Miller was an independent contractor, Component Homes points to the Regional Sales Managers Agreement which provided:

The [regional sales manager] is an independent contractor and is in no way an agent of [Component Homes], either expressed or implied, and ... has no authority to enter into any contract or agreement on behalf of [Component Homes] or to act as an agent for [it] in any way.

It also introduced testimony by Miller's income tax preparer who stated Miller considered himself an independent contractor for tax purposes. This evidence, Component Homes argues, compels a conclusion that Miller was an independent contractor as a matter of law.

■ To determine whether a person is an independent contractor or an employee we look primarily to see who has the right of

control. *See Greenwell v. Meredith Corp.,* 189 N.W.2d 901, 904–05 (Iowa 1971).

■ The facts demonstrating Miller's status as an employee are numerous. He received training from Component Homes. Sales materials, contract forms, and business cards, all prominently displaying Component's name, were supplied by defendant as were customer leads and selling tips. Each week, Miller was required to attend a sales meeting. At the end of each day, he was required to call one of defendant's officers to discuss his progress. Once a week, Miller and the officer would review the week's progress and talk about prospects for the future. Additionally, Miller was not allowed to price defendant's products despite his consistent contact with his customers; each potential project had to be referred to defendant for calculations.

Component Homes' job application form, signed by Miller, provided that he "agree[d] to be governed and to abide by all company rules and regulations" and that "compliance with all of these terms is a condition of my employment with Component Homes, Inc.; and noncompliance therewith may subject me to dismissal, at the Company's option."

We conclude there was substantial evidence to support the finding that Miller was an employee under chapter 91A, and the trial court properly submitted the case on that basis.

III. *Employee-Independent Contractor Instruction.*

Component Homes argues the trial court erred in its instruction to the jury on the employee-independent contractor distinctions. The court, in Instruction twenty-five, stated that, while "the most important consideration in determining whether an individual is an employee or an independent contractor is the right to control the physical conduct of the worker," other factors should also be considered. Those factors, it instructed, included the right to terminate, requirements for adherence to employer rules, whether products are sold in the employer's name, percentage of the worker's time devoted to the employer's business, and others.

■ Component Homes' objection centered on the court's refusal to instruct that "the overriding element to be considered is the intention of the parties as to the relationship they have created." The court did not err in refusing this instruction because it is not a correct statement of the law.

■ We have held that the primary consideration is the right of control, not the intention of the parties. *See Greenwell,* 189 N.W.2d at 904–05. While the Restatement lists the intentions of the parties as one consideration, there is no suggestion it is the primary consideration or even that intent is a prerequisite to a finding of an employer-employee relationship. *See* Restatement (Second) Agency § 220 (1958). *Hassebroch v. Weaver Construction Co.,* 246 Iowa 622, 67 N.W.2d 549 (1954), which defendant relies on in pressing its intent argument, mentions the Restatement rule, but points out it was a factor not considered in Iowa cases. *Id.* at 628, 67 N.W.2d at 553. Moreover, as Miller points out, the party's intent is implicit in other factors listed for the juror's consideration. We conclude the trial court correctly instructed the jury on this issue.

IV. *Attorney's Fees.*

Iowa Code section 91A.8 provides, in part, that

[w]hen it has been shown that an employer has intentionally failed to pay an employee wages ... the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary.

The question raised by Component Homes is whether, under these circumstances, fees may be added to the judgment under section 91A.8. It argues that, under a contingent fee agreement, attorney's fees are included in the judgment,

precluding addition of attorney's fees under section 91A.8.

Its argument, certainly novel, is that it is a "third party beneficiary" of the fee agreement between Miller and his attorney, and that to allow an attorney fee recovery from Component Homes would constitute a windfall to Miller.

 Under Iowa Code section 91A.8, the burden to pay attorney's fees is clearly placed upon the employer. Under Component Homes' argument, the burden would be shifted back to the plaintiff who would obtain less than the full statutory amount due him. The fact that the plaintiff and his attorney have their own agreement for attorney fees does not change the obligation of the employer to pay attorney's fees. *Cf. Carmichael v. Iowa State Highway Commission*, 219 N.W.2d 658 (Iowa 1974); *In re Condemnation of Lands*, 261 Iowa 146, 154, 153 N.W.2d 706, 711 (1967). To accept Component Homes argument on this issue would, in effect, be a windfall to it. We find no merit in this argument.

V. *Other Assignments of Error.*

Component Homes has raised numerous other issues, including a claim there was "a fatal variance" between Miller's opening statement and the evidence; that Miller's attorney had improperly mentioned Iowa Code chapter 91A in his opening statement; that the court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict; that the court erred in not requiring Miller to elect his "theory of remedy"; and that it failed to properly instruct the jury on certain other issues. Various sub-issues are raised in connection with several of these. We have considered each of the assignments and conclude they are without merit.

AFFIRMED.