# United States Court of Appeals
### For the Eighth Circuit

_____

No. 11-2666
_____

David K. Fesler

*Plaintiff - Appellant*

v.

Whelen Engineering Company, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: March 13, 2012
Filed: August 16, 2012

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

David K. Fesler sued Whelen Engineering Company, Inc. ("Whelen") for breach of contract. The district court[1] granted summary judgment for Whelen, and Fesler appeals. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

I.

In October 1980, Fesler began working as a sales representative for Whelen, a manufacturing company headquartered in Chester, Connecticut. John Olson, the president of Whelen, hired Fesler based on an oral conversation, and Fesler did not sign any contract, agreement, or other documentation related to his relationship with Whelen.

As a sales representative, Fesler was responsible for promoting and selling Whelen automotive, industrial, and public warning products in his assigned territory. The territory initially included Minnesota, Iowa, Nebraska, and Kansas. Neither Olson nor other Whelen officials described to Fesler the terms of his payment as a sales representative, other than that he would be paid on a commission basis. Fesler learned the nature of the commission structure from other sales representatives. His commission was based on a percentage of sales in his territory, initially set at nine percent. Every year of Fesler's relationship with Whelen, Whelen issued Fesler an IRS Form 1099 for his commission payments.

From the beginning of his relationship with Whelen in 1980 until approximately 1988, Fesler deposited his commission compensation into an account for Dan R. Fesler & Son, Inc. Fesler then received a paycheck from that account, with all tax withholdings, unemployment, and workers' compensation taxes paid through Dan R. Fesler & Son, Inc. In 1988, Fesler formed a new corporation named David Kimm Fesler, LTD, and thereafter received his paychecks from that entity.

Through his own company, David Kimm Fesler, LTD, Fesler operated an office, hired employees, and paid for the expenses incurred in promoting and selling Whelen products. Fesler was responsible for setting up the office and paying for office supplies and equipment. Fesler had to pay for some sample Whelen products, although Whelen provided him other samples at no cost. Fesler's employees were

employed by Fesler's company, and all payments and withholdings were made by his company. Whelen occasionally provided Fesler an additional commission percentage, based on sales in the region, to cover personnel expenses. Whelen also paid for Fesler's lodging and group meals if he attended a sales meeting or trade show, although Fesler covered his own travel expenses.

Throughout his tenure as a sales representative, Whelen provided Fesler with a series of documents that outlined the policies and procedures applicable to sales representatives. The documents, issued in 1985, 1994, and 1995, all identified sales representatives as "independent contractors, not employees," and stated that they were appointed on a "non-exclusive" basis to certain territories and product lines. The 1995 policy document, which superseded the 1985 and 1994 policies, provided that sales representatives "shall pay for their own expenses, insurance, transportation and other travel or living expenditures," and are "responsible for the payment of all of his/her own expenses, which include, but are not limited to: taxes, workman's compensation, retirement plan, health insurance, etc." The policy also included numerous requirements applicable to sales representatives, including that they work with Whelen to determine which trade shows to attend, make two annual visits to the Whelen plant for an annual sales meeting and a two-day training session, maintain a separate Whelen telephone line, contact the Whelen plant once per day to obtain messages and report on activities, respond to customer complaints and coordinate service or resolve problems, and collect information on competitors' activities.

The 1995 policy also contained the following provisions concerning termination:

I.p. TERMINATION

I.p.1  Whelen Engineering reserves the right to terminate portions of territories or individual product lines of a given Authorized Managing Sales Representatives.

-3-

I.p.2  Every effort will be made to provide warnings of an Authorized Managing Sales Representative's failings.

I.p.3  If, in the opinion of the Management of Whelen Engineering Company, an Authorized Managing Sales Representative has not met general goals as detailed, such Authorized Managing Sales Representative may be put on "notice" (i.e. probationary period) up to 6 months that mandates improved performance.  At the end of the time period, if revised targets and goals are not met, then the Company will, at its option, either aggressively look for a replacement Authorized Managing Sales Representative or may elect to notify the Authorized Managing Sales Representative of termination.

I.p.4  If termination is opted, commission payout will continue on any order booked before the effective termination date and invoiced subsequently.

I.p.5  If it is found that the Authorized Managing Sales Representative has sold or converted a customer to buy a competitor[']s product, it is grounds for immediate termination.

I.p.6  Conduct that could harm the reputation of the company could also be grounds for immediate termination.

On July 11, 2007, Whelen Vice President Phil Kurze informed Fesler that his relationship with Whelen would end on July 31, 2007.  Kurze told Fesler that the company was going in a different direction, and that Fesler did not fit into that direction.  Kurze sent Fesler a follow-up letter, formally stating that Fesler's services as a sales representative were terminated.

On July 8, 2009, Fesler sued Whelen in the Iowa District Court for Johnson County.  Whelen removed the action to federal court.  Fesler filed an amended complaint on January 6, 2010, alleging one count of breach of contract.  Fesler alleged that he was an employee of Whelen, that the 1985, 1994, and 1995 policy

documents created a unilateral contract of employment, and that Whelen breached that unilateral contract of employment by terminating him without just cause and by failing to provide him with notice of substandard performance and an opportunity to cure.

Whelen moved for summary judgment, arguing (1) that Fesler was an independent contractor and not an employee of Whelen, (2) that even if Fesler was an employee, his employment was at-will because he did not have a contract of employment with Whelen, and (3) that even if the written policies were sufficient to constitute a unilateral contract of employment, Fesler has not demonstrated a breach of any provision. The district court granted summary judgment in favor of Whelen. The court ruled (1) that no reasonable jury could conclude that Fesler was an employee of Whelen, (2) that even assuming that Fesler could be classified as an employee, the written policies were not sufficiently definite to constitute a unilateral contract of employment, and (3) that even assuming that the written policies constituted a contract of employment, no reasonable jury could find a breach of contract.

II.

Fesler argues that the district court erred in holding that no reasonable jury could conclude that he was an employee of Whelen. The ultimate issue of whether an individual is an employee or independent contractor is a question of law, and it may be resolved on summary judgment if there is no genuine issue of material fact. *See Lerohl v. Friends of Minn. Sinfonia*, 322 F.3d 486, 488 (8th Cir. 2003). We consider the question of employment status *de novo*. *Birchem v. Knights of Columbus*, 116 F.3d 310, 313 (8th Cir. 1997).

Under Iowa law, the following factors are relevant in determining whether an individual is an employee or an independent contractor: (1) the individual's right to

control the physical conduct and progress of the work, except as to final results; (2) whether the individual was on the employer's payroll; (3) the method of payment, whether by time or by job; (4) the individual's obligation to furnish necessary tools, supplies, and materials to accomplish the work; (5) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (6) the independent nature of the individual's business; (7) the individual's employment of assistants, with the right to supervise their activities; (8) the time for which the individual is employed; (9) whether the work is part of the regular business of the employer; and (10) the intent of the parties. *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542-43 (Iowa 1997). The primary focus, however, is on "the extent of control by the employer over the details of the alleged employee's work." *Id*. at 542.

Most of these factors weigh heavily in favor of finding that Fesler was an independent contractor for Whelen. Fesler was on the payroll of his own independent business, David Kimm Fesler, LTD, not on the payroll of Whelen. Whelen paid him commissions based on sales in his territory, not on the amount of time he worked. Through his independent business, Fesler hired, paid, and supervised employees, furnished his own office equipment and supplies, and paid for his own travel expenses, taxes, workers' compensation, and insurance, as required by the 1995 policy document. Although Fesler claims he did not intend to be an independent contractor, Whelen intended for Fesler and all other sales representatives to be independent contractors, as evidenced by the explicit references to sales representatives as "independent contractors, not employees" in the policy documents. Only two factors weigh against independent contractor status. Fesler was a sales representative for Whelen for nearly twenty-seven years, and Fesler's work—promoting and selling Whelen products—was arguably part of the regular business of Whelen.

Fesler's primary contention is that although he operated his own independent business, Whelen exercised significant control over the details of his activities.

Whelen required Fesler to provide weekly itineraries of his planned activities in his territory, to pursue recommended sales leads and report the results to Whelen within thirty days of receiving the leads, to make daily contact with Whelen, and promptly to return telephone calls from Whelen management. On occasion, Whelen also directed the hiring of additional personnel and gave approval for the hiring of some staff. And while Fesler generally could select his own office location, Whelen twice told Fesler to move his office—once out of his father's office, which was a Whelen distributorship, and once out of his personal residence.

Whelen did exercise some control over Fesler's work, but the limited degree of direction evidenced here did not make Fesler an employee. Some control is permitted "so as to enable [the company] to see to it that the final result contemplated by the arrangement was accomplished." *LaFleur v. LaFleur*, 452 N.W.2d 406, 410 (Iowa 1990); *see also Meredith Publ'g Co. v. Iowa Emp't Sec. Comm'n*, 6 N.W.2d 6, 10-11 (Iowa 1942). Fesler generally was able to perform his work—promoting and generating sales of Whelen products—in the means and manner that he saw fit. Whelen did not control the "methods, details, and particulars" of Fesler's work, so as to give rise to a relationship of employer and employee. *LaFleur*, 452 N.W.2d at 410. Considering the combined weight of the relevant factors, we agree with the district court as a matter of law that Fesler was an independent contractor.

Because Fesler is an independent contractor and not an employee, the policy documents could not have created a unilateral contract. *See Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 282 (Iowa 1995). The district court thus properly dismissed Fesler's claim for breach of contract.

\*　　\*　　\*

The judgment of the district court is affirmed.

_____