**IN THE COURT OF APPEALS OF IOWA**

No. 14-0636
Filed March 11, 2015

**RIFET MUJKIC,**
    Plaintiff-Appellant,

**vs.**

**LYNX, INC. d/b/a LYNX TRANSPORTATION, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Rifet Mujkic appeals the district court's ruling denying his Iowa Code chapter 91A (2011) and promissory estoppel claims against Lynx, Inc. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Erin Patrick Lyons of Dutton, Braun, Staack & Hellman, Waterloo, for appellant.

Kate B. Mitchell of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Rifet Mujkic appeals the district court's ruling denying his Iowa Code chapter 91A (2011) and promissory estoppel claims against Lynx, Inc. We affirm in part, reverse in part, and remand with directions.

## I.   *Background Facts and Proceedings*

Selvedin Babic and Rifet Mujkic were friends and neighbors in their native country, Bosnia, and have known each other since childhood. Babic and Mujkic's friendship continued over the years after both moved to Waterloo.

Babic is the president and sole shareholder of Lynx, Inc., doing business as Lynx Transportation, Inc. In February 2012, Mujkic began working for Lynx. Mujkic and Babic signed Lynx's standard "contract agreement" setting forth the terms of Mujkic's employment. Mujkic worked as a "company driver," driving a company truck for Lynx and earning $0.38 to $0.40 per mile. Lynx was responsible for all operating expenses of the truck, including fuel, tolls, repairs, insurance, and registration.

Within a few months, Mujkic expressed interest to Babic in buying a truck so he could work as an "owner/operator" and earn compensation "per load." Lynx owner-operator drivers were responsible for expenses such as liability and cargo insurance, fuel, tolls, truck repairs, truck registration, and trailer rent. Also, Lynx charged its owner/operator drivers a ten-percent negotiation fee for scheduling loads with the broker.

Lynx maintained a "T-Check"[1] account to cover fuel expenses for its drivers. Lynx provided both company and owner/operator drivers with a card to pay for fuel. Drivers were required to enter a PIN and/or sign when purchasing fuel with the card. Lynx did not deduct "T-Check Fuel" advances from its company drivers' paychecks. With pre-approval from Lynx, drivers could also receive cash advances for personal expenses by using the T-Check system. Lynx deducted these "T-Chek Advances" from its drivers' paychecks.

Lynx also deducted $100 from each paycheck (up to a total of $1000) of both company drivers and owner/operators, which was paid into an escrow account. The escrow account was used to cover insurance deductibles for accidents caused by Lynx drivers. At the end of the driver's employment, if the escrow money was not used, the driver received the money back. In other words, Lynx used these payments into escrow as a mandatory "savings account" for its drivers.

Mujkic and Babic reached an agreement for Mujkic to purchase from Lynx the truck he had been driving as a company driver, a 2006 International 9200i semi-truck. Due to Mujkic's poor credit history and lack of driving experience, Babic agreed to personally finance Mujkic's truck purchase and assist with Mujkic's other owner-operator expenses. They agreed Mujkic would pay $32,000 for the truck. Mujkic did not have the $3000 down payment, so Babic agreed to the first $1000 would be taken from Mujkic's escrow account and $1000 would be deducted from each of his next two paychecks. The $29,000 balance was to be paid in monthly installments of $1500. The agreement did not appear to provide

---

[1] Also referred to as "T-Chek."

for the payment of any interest. The cost of insurance and registration, paid by Lynx, was bundled in the purchase price, and Babic agreed to keep the registration and plates in Lynx's name. When Mujkic paid off the truck, title would transfer to his name, and he would assume responsibility for those expenses. Mujkic did not sign an additional contract agreement when his status changed from company driver to owner-operator.

Within a few months, Mujkic had the truck serviced to repair the air-conditioning. Lynx paid for the servicing via T-Check and the charge was subsequently deducted from Mujkic's paycheck. The air-conditioning needed servicing again shortly thereafter. Mujkic told Babic that Lynx needed to pay the bill or he would return the truck. Babic informed Mujkic that the owner/operator was the party ultimately responsible for repair expenses. Mujkic left the truck at the repair center and did not pay the bill. Mujkic quit working for Lynx in July 2012. Lynx subsequently sold the truck to Jasmin Bejtic for $16,000.

In October 2012, Mujkic filed this action against Lynx, alleging a violation of the Iowa Wage Payment Collection Law under Iowa Code chapter 91A for Lynx's deductions of his paychecks for T-Check advances and for escrow, and that he was entitled to equitable relief from Lynx under the doctrine of promissory estoppel for his payments toward the truck. Lynx filed an answer and raised two counterclaims for damages as a result of Mujkic's failure to: (1) reimburse Lynx for repairs made to the truck in the amount of $880.06, and (2) pay Lynx for the balance of the purchase price owed on the truck—after deducting the amount Mujkic paid and Lynx's mitigation of damages—in the amount of $8500. Mujkic filed two motions for partial summary judgment, which the district court overruled.

The case proceeded to a two-day bench trial in November 2013. The court heard testimony from Mujkic, Babic, Senaid Babic (Selvedin Babic's brother and the manager of Lynx). The parties also introduced a number of evidentiary exhibits, including the parties' contract agreement, repair invoices, and Lynx paystubs.

In January 2014, the district court entered a ruling denying Mujkic's claims and awarding no damages to Mujkic. Specifically, the court determined Mujkic was an independent contractor during his tenure with Lynx, and therefore was not protected by chapter 91A. The court further found Mujkic had failed to prove the necessary elements of promissory estoppel. Finally, the court found Lynx's counterclaims moot, as they "were for the purposes of set-off exclusively." Mujkic filed a motion to enlarge or amend, which the court denied. Mujkic appeals.

## II.    *Standard of Review*

We review cases tried at law for correction of errors at law. *Lindsay v. Cottingham & Butler Ins. Servs.*, *Inc.*, 763 N.W.2d 568, 573 (Iowa 2009). We are bound by the district court's findings of fact if they are supported by substantial evidence. *Sutton v. Iowa Trenchless*, *L.C.*, 808 N.W.2d 744, 749 (Iowa Ct. App. 2011).

## III.    *Iowa Wage Payment Collection Law, Iowa Code chapter 91A*

Mujkic claims he is entitled to an award of damages from Lynx under the Iowa Wage Payment Collection Law. At the outset, we must determine whether chapter 91A is applicable to Mujkic's claim.

The Iowa Wage Payment Collection Law, by its terms, applies only to an "employee," defined as "a natural person who is employed in this state for wages by an employer." *See* Iowa Code § 91A.2(3) (defining "employee"). Chapter 91A does not apply to independent contractors. *Miller v. Component Homes*, *Inc.*, 356 N.W.2d 213, 216 (Iowa 1984) ("The act by its terms protects only 'employees'—not independent contractors." (discussing chapter 91A)).

During his tenure with Lynx, Mujkic worked as a company driver and as an owner/operator. Mujkic claims he was an employee of Lynx in both these capacities.

*A. April through July 2012.* We first turn to the latter portion of Mujkic's tenure with Lynx—April to July 2012—when he was an owner/operator. Mujkic claims the district court erred in determining he was an independent contractor precluded from recovery during this time period.[2] For the following reasons, we find Mujkic's claim unpersuasive.

"In cases presenting a choice between categorizing a person as an employee or an independent contractor, the primary focus is on the extent of control by the employer over the details of the alleged employee's work." *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542 (Iowa 1997). Factors relevant to this consideration include:

> (1) who had the right to control the physical conduct of the work;
> (2) whether the purported employee was on the employer's payroll;
> (3) the method of payment, whether by time or by job; (4) who
> provided the equipment to accomplish the work; (5) the individual's

---

[2] Mujkic presents an alternative claim that even as an independent contractor he should be afforded recovery under chapter 91A. We decline Mujkic's request to interpret the applicability of chapter 91A as to independent contractors differently than the Iowa Supreme Court. *See Miller*, 356 N.W.2d at 216.

obligation to furnish necessary tools, supplies, and materials; (6) the existence of a contract for the performance of a certain kind of work at a fixed price; (7) the independent nature of the individual's business; (8) the individual's employment of assistants, with the right to supervise their activities; (9) the time for which the individual is employed; (10) whether the work is part of the regular business of the employer; (11) the intent of the parties; and (12) the right to control the progress of the work, except as to final results.

*Fesler v. Whelen Eng'g Co.*, 794 F. Supp. 2d 994, 1008-09 (S.D. Iowa 2011) *aff'd*, 688 F.3d 439 (8th Cir. 2012) (citing *Iowa Mut. Ins. Co.*, 572 N.W.2d at 542-43).

The district court thoroughly and meticulously analyzed each of these factors in determining Mujkic's status as an independent contractor, and we need not regurgitate substantially the same analysis here. As an owner/operator, Mujkic earned compensation "per load." From the broker's payment, Lynx deducted a ten-percent negotiation fee for scheduling loads with the broker, T-Check advances, cargo insurance, trailer rent, and escrow. Mujkic was paid the balance. Mujkic supplied his own truck. He controlled the day-to-day use of, and was responsible for every aspect of the vehicle. As an owner/operator, Mujkic was responsible for all expenses associated with being a registered driver and completing the jobs, such as liability insurance, fuel, tolls, truck repairs, and truck registration. Mujkic controlled the physical conduct of his work. He decided which loads he would take and which loads he would refuse. He decided what hours he would work. He decided the routes he took. He decided the manner in which he drove. Mujkic purchased a truck and took a tax deduction based on the truck's depreciation in value on his 2012 tax return. Mujkic represented himself as an owner/operator and as independent business owner on his tax return.

In sum, with regard to the time period of April to July 2012, we find no error in the district court's conclusion that Mukjic was an independent contractor. Accordingly, Mujkic cannot prevail on his chapter 91A claim for damages for April to July 2012. We affirm on this issue.

*B. February through March 2012.* We next turn to the earlier portion of Mujkic's tenure with Lynx—February and March 2012—when he was a company driver for Lynx. In this position, Mujkic drove a company truck and earned $0.38 to $0.40 per mile. Lynx furnished the truck. Lynx furnished the necessary supplies and materials for Mujkic to accomplish his work. Lynx was responsible for all Mujkic's employment and over-the-road expenses, including expenses such as fuel, truck repairs, insurance, and registration. Although Mujkic had some say on his routes, hours, and manner in which to drive, he was expected to do what he was told by Lynx. Mujkic's work, driving trucks, was a part of the regular business of Lynx, a trucking company.

Considering these circumstances, we conclude the district court erred in determining Mujkic was an independent contractor during February and March 2012.[3] Because Mujkic was an employee of Lynx in February and March 2012, chapter 91A was applicable to the portion of his claim stemming from that time period.

---

[3] We note that Lynx's trial counsel conceded at trial that Mujkic was an employee of Lynx in February and March 2012. "As a general rule 'admissions of an attorney, whether written or oral, if relevant and material and within the scope of his employment, are admissible against his client.'" *State v. Howell*, 290 N.W.2d 355, 359 (Iowa 1980) (quoting *Suntken v. Suntken*, 272 N.W. 132, 137 (Iowa 1937)). Nevertheless, and without taking the concession into consideration, we independently find Mujkic was an employee of Lynx in February and March 2012.

The purpose of chapter 91A is to facilitate collection of wages by employees. *Runyon v. Kubota Tractor Corp.*, 653 N.W.2d 582, 585 (Iowa 2002). "An employer must pay all wages due its employees." Iowa Code § 91A.3; *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 202 (Iowa 1997). "Wages" is defined as compensation owed by an employer for:

> a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.
> . . . .
> c. Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.

Iowa Code § 91A.2(7). Iowa Code section 91A.5 provides:

> 1. *An employer shall not withhold or divert any portion of an employee's wages unless*:
> a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or
> b. *The employer has written authorization from the employee to so deduct* for any lawful purpose accruing to the benefit of the employee.

Iowa Code § 91A.5(1) (emphasis added).

Mujkic points to withholdings for T-Check dispersions and escrow payments as funds that should not have withheld or diverted from his wages while employed by Lynx. Lynx did not have "written authorization" from Mujkic for either of these types of withholdings. *See id.*

Turning first to the T-Check deductions, we conclude Mujkic cannot prevail on his claim, because the challenged deductions were not wages "owed" or "due"

to him. The evidence presented at trial established the T-Check advances made to Mujkic were moneys paid by Lynx in advance of when Mujkic earned them. Consequently, the subsequent payroll deductions were not withholdings of Mujkic's wages due or owed, because the money deducted was not then due and owing to Mujkic—it had already been paid. The T-check deductions were merely reimbursements to Lynx for advances on wages Mujkic expected to earn. In other words, if not for the T-Check deductions, Mujkic would, in effect, be indebted to Lynx.

We reach a different conclusion as to the escrow payments. It is clear from the record these withholdings or diversions came from wages owed to Mujkic. As Babic testified, "Every driver has an escrow account with Lynx, and that is in the amount of $1000.00, and it's withheld in first ten paychecks they receive, $100.00 from each paycheck." Pursuant to Iowa Code section 91A.5, "[Lynx] shall not withhold or divert any portion of [Mukic's] wages unless . . . [Lynx] has written authorization from [Mujkic] to so deduct for any lawful purpose accruing to the benefit of the employee." *See id.* Lynx's action in withholding escrow payments from Mujkic's wages in February and March 2012 without written authorization from Mujkic constituted a violation of chapter 91A. Further, the deductions were not for the benefit of the employee. The deductions were withheld to reimburse the employer for property damage occurring to the employer's vehicle. Such deductions are expressly prohibited by statute. *See* Iowa Code § 91A.5(2)(c) (stating the employer may not withhold from wages "losses due to . . . damage to property").

When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally failed to be paid or reimbursed, plus liquidated damages, court costs and any attorney's fees incurred in recovering the unpaid wages and determined to have been usual and necessary. In other instances the employer shall be liable only for unpaid wages or expenses, court costs and usual and necessary attorney's fees incurred in recovering the unpaid wages or expenses.

*Id.* § 91A.8.

Accordingly, we reverse the district court's ruling on Mujkic's claim for damages stemming from Lynx's chapter 91A violation during February and March 2012 with regard to the escrow payments withheld or diverted from Mujkic's wages. We remand to the district court for a determination of damages and attorney fees and costs incurred by Mujkic, if any, and whether a penalty should be assessed to Lynx. In reaching its conclusion, the district court may consider Mujkic's ultimate use of the escrow funds to his benefit in purchasing the semi-truck from Lynx[4] and any off-set to Mujkic's damages by Lynx's counterclaims.[5]

---

[4] The record indicates Mujkic received the escrow funds from Lynx during the course of his employment and applied the funds toward his truck purchase. Specifically, Mujkic and Babic agreed to apply the $700 in escrow payments accumulated by Mujkic during February and March toward Mujkic's $3000 down payment on the semi-truck he purchased from Lynx.

[5] Lynx raised two counterclaims for damages as a result of Mujkic's failure to: (1) reimburse Lynx for repairs made to the truck in the amount of $880.06, and (2) pay Lynx for the balance of the purchase price owed on the truck—after deducting the amount Mujkic paid and Lynx's mitigation of damages—in the amount of $8500. The district court found Lynx's counterclaims moot, as they "were for the purposes of set-off exclusively," and the court's ruling denied Mujkic's claims and awarded no damages to Mujkic.

## IV. *Promissory Estoppel*

Mujkic raised an alternative claim under the doctrine of promissory estoppel, alleging he relied on and acted to his detriment based on promises made by Lynx with regard to his purchase of the semi-truck. In support of this claim, Mujkic testified at trial that he relied, to his detriment, on Babic's promise to give him "something in writing stating that [Mujkic] had purchased this truck and that [Mujkic] was making payments for it."[6] Mujkic explained he returned the truck to Babic when that "didn't happen."

As an aside, we observe the record is clear Mujkic left the truck at the repair shop after Babic declined to pay to repair its air conditioning. We further observe Mujkic agreed it was his responsibility—not Lynx's—to pay for repairs to the truck. At the time he "returned" the truck, Mujkic owed $24,500 on the purchase price of $32,000. Lynx subsequently sold the truck for "the best offer he received"—$16,000.

A party asserting promissory estoppel must prove:

(1) a clear and definite promise; (2) the promise was made with the promissor's clear understanding that the promisee was seeking assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his or her substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Kolkman v. Roth*, 656 N.W.2d 148, 156 (Iowa 2003). "[S]trict proof of all the elements" is required. *Id.*

---

[6] We have reviewed the parties' testimony as well as the district court's credibility findings in favor of Babic on this claim. "The district court has a better opportunity than the appellate court to evaluate the credibility of witnesses." *Etchen v. Holiday Rambler Corp.*, 574 N.W.2d 355, 360 (Iowa Ct. App. 1997). We decline to address Mujkic's claim that the oral contract was merely an agreement to agree.

On this issue, the district court stated:

> Mujkic contends that Babic, on behalf of Lynx, made a clear and definite promise to sell a truck in exchange for $32,000.00 paid over time. Mujkic further claims that this agreement included a promise to draft a written contract document setting forth all the various terms and conditions of the contract and that this was not done. Relying upon a pending written contract, Mujkic consented to payments for the truck being withdrawn monthly from his payments from Lynx, and that he relied to his detriment in reasonable reliance on the promise. Mujkic requests that in order to avoid injustice, the Court order Lynx to return the funds he had already paid towards the purchase price of the truck.
>
> The Court finds that four requisite factors to establish a claim for promissory estoppel are not present in this case. While there certainly was a clear oral agreement between these parties to sell a truck for $32,000.00 with payments made over time, the Court finds that the evidence did not show that there was a simultaneous agreement for the parties to confirm the agreement in writing, rendering element (2) missing. The Court finds the plaintiff's testimony regarding the promise of a pending written contract to be self-serving and unreliable. The Court finds that the parties executed the agreement as they understood it. Lynx turned the truck over to Mujkic in exchange for his down payment and subsequent monthly payments. Mujkic received an ownership interest in the truck and increased his compensation potential as an owner-operator.
>
> Further, the Court does not find that the plaintiff has proven element (4) that injustice can only be avoided by enforcing the promise. Mujkic is not asking the Court for equitable relief such as specific performance to purchase the truck for the price originally agreed to; he asks the Court for a return of moneys paid pursuant to a contract that he breached. Mujkic enjoyed the use and benefits of the truck for over four months, and voluntarily walked away from the transaction after the truck's air conditioning malfunctioned a second time, incurring additional repairs and expenses ultimately borne by Babic. Mujkic, on his own volition, decided that the costs associated with ownership were too great and chose not to follow through with the parties' agreement.
>
> The Court does not find on these facts that injustice can only be avoided by enforcing the parties' promise. Mujkic has not met his burden to prove the necessary elements of promissory estoppel, and thus his second claim also fails.

We find no error in the court's well-reasoned conclusion on this issue, and decline to disturb it on appeal. We affirm on this issue.

*V.* ***Conclusion***

With regard to Mujkic's Iowa Code chapter 91A claim against Lynx, we find no error in the district court's conclusion that Mukjic was an independent contractor during the time period of April through July 2012, and therefore that Mujkic cannot prevail on his chapter 91A claim for damages during that time. However, we reverse the district court's ruling on Mujkic's claim for damages stemming from Lynx's chapter 91A violation during February and March 2012, during which Mujkic was an employee of Lynx, with regard to escrow payments withheld or diverted from Mujkic's wages; we remand to the district court for a determination of damages and attorney fees and costs incurred by Mujkic, if any, and whether a penalty should be assessed to Lynx.

We affirm the district court's ruling denying Mujkic's promissory estoppel claims against Lynx.

Costs on appeal are assessed equally to the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**